Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/24/2019 09:07 AM CDT

State of Nebraska, appellee, v.
Jordan L. Beehn, appellant.
___ N.W.2d ___

Filed May 24, 2019.    No. S-18-603.

1. **Postconviction: Evidence: Witnesses: Appeal and Error.** In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. An appellate court upholds the trial court's findings unless they are clearly erroneous.

2. **Effectiveness of Counsel.** A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact.

3. **Effectiveness of Counsel: Appeal and Error.** When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's conclusion.

4. **Postconviction: Constitutional Law.** Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable.

5. **Postconviction: Sentences: Appeal and Error.** The Nebraska Postconviction Act is intended to provide relief in those cases where a miscarriage of justice may have occurred; it is not intended to be a procedure to secure a routine review for any defendant dissatisfied with his or her sentence.

6. **Postconviction: Effectiveness of Counsel: Appeal and Error.** To establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient;

that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case.

7. **Postconviction: Effectiveness of Counsel: Proof.** In a postconviction proceeding, a showing of prejudice to the defense requires a demonstration of reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.

8. **Trial: Attorneys at Law.** Trial counsel is afforded due deference to formulate trial strategy and tactics.

9. **Effectiveness of Counsel: Pleas: Proof.** In a claim for ineffective assistance of counsel, the likelihood of the defense's success should be considered with other factors such as the likely penalties the defendant would face if convicted at trial, the relative benefit of the plea bargain, and the strength of the State's case.

10. ____: ____: ____. Self-serving declarations that a defendant would have gone to trial are not enough to warrant a hearing; a defendant must present objective evidence showing a reasonable probability that he or she would have insisted on going to trial.

11. **Convictions: Effectiveness of Counsel: Pleas: Proof.** When a conviction is based upon a guilty plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty.

Appeal from the District Court for Madison County: Mark A. Johnson, Judge. Affirmed.

Jack W. Lafleur, of Moyer & Moyer, for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ.

Heavican, C.J.

### INTRODUCTION

Jordan L. Beehn appeals from an order denying his motion for postconviction relief following an evidentiary hearing.

Beehn pled no contest to first degree assault and tampering with a witness and is currently serving 50 to 50 years' imprisonment. We affirm.

## BACKGROUND

On November 24, 2012, Beehn and his wife were at a bar in Norfolk, Nebraska. They left the bar at the same time as another group of patrons, which consisted of brothers Jose Zepada and Jorge Zepada, accompanied by Jessika Ruroede. As the two groups left the bar, Beehn's wife and Ruroede engaged in an argument that led to a physical altercation between the two women. Jose and Jorge stood over the two women as they were fighting on the ground. According to witness accounts, Jose and Jorge tried to pull Beehn's wife from Ruroede, at which point Beehn retrieved a handgun from his person, hit Jose with the gun, and shot Jorge. The bullet struck Jorge's spinal cord and paralyzed him from the head down, an injury from which he will never recover.

Beehn was subsequently arrested for the assaults on Jose and Jorge. While Beehn was in jail awaiting trial, he suggested that his wife change her story about being "on top" during the altercation with Ruroede as she had previously told the police and had stated during recorded jail telephone calls to Beehn following the incident. In a letter sent from jail, Beehn further instructed his wife to locate other unidentified witnesses and offer to "pay what ever [sic] they want."

Beehn was initially charged with five offenses corresponding to the assaults. With regard to Beehn's assault of Jorge, Beehn was charged with first degree assault, a Class II felony, and second degree assault, a Class III felony. With regard to Beehn's assault of Jose, Beehn was charged with second degree assault, a Class III felony. In addition to the assault charges, Beehn was charged with use of a firearm to commit a felony, a Class IC felony, and possession of a firearm during the commission of a felony, a Class II felony. Upon the State's learning of Beehn's letter to his wife from jail, the State added

two additional charges of tampering with a witness, a Class IV felony, and bribery, a Class I misdemeanor.

Beehn had various attorneys throughout the pretrial proceedings, which lasted from November 2012 to February 2014. From the inception of the case until June 2013, Beehn was represented by private counsel, Charles Balsiger. Beehn discharged Balsiger, and the Madison County public defender, Kyle Melia, was appointed to the case. Melia represented Beehn for approximately 1 month, from June to July 2013. Beehn subsequently discharged Melia and hired private counsel, Craig Martin and Dennis McCarthy. Martin and McCarthy represented Beehn for the remainder of his proceedings at the trial level, from July 2013 until the entry of his pleas and sentencing in February 2014.

In December 2013, while represented by Martin and McCarthy, Beehn entered into a plea agreement with the State. Beehn pled no contest to one count of first degree assault and one count of tampering with a witness. In exchange for Beehn's pleas, the State dismissed the remaining five charges and agreed to make no specific sentencing recommendation. The district court advised Beehn of the rights he was waiving by entering the pleas, and a factual basis was provided, after which the district court accepted Beehn's pleas. Beehn, still represented by Martin and McCarthy, was sentenced to 50 to 50 years' imprisonment for the first degree assault conviction and 12 to 12 months' imprisonment for the tampering with a witness conviction. The sentences were ordered to run concurrently, resulting in an aggregate sentence of 50 to 50 years' imprisonment.

*Direct Appeal.*

On direct appeal, Beehn was again represented by Melia. On appeal, Beehn's sole assignment of error was a claim of excessive sentences. On August 1, 2014, in case No. A-14-195, the Nebraska Court of Appeals, without opinion, summarily affirmed Beehn's convictions and sentences.

*Postconviction.*

Following the denial of his direct appeal, Beehn initiated this postconviction proceeding. Beehn alleges, for the first time, that he received ineffective assistance of counsel at both the trial and appellate levels. With the assistance of new counsel, Beehn alleged a number of errors that can be consolidated as follows: (1) Trial counsel was ineffective for failing to advise Beehn about the defenses of self-defense and defense of others under Neb. Rev. Stat. §§ 28-1409 and 28-1410 (Reissue 2016); (2) trial counsel was ineffective for failing to advise Beehn that by entering his pleas, he would be waiving his right to appeal from pretrial rulings; (3) trial counsel was ineffective for failing to interview and depose witnesses and for failing to investigate the prospect of additional witnesses beyond those listed in the police reports; (4) trial counsel was ineffective for incorrectly advising Beehn that all communications between Beehn and his wife were privileged and could not be used against Beehn in the prosecution of his criminal charges; and (5) appellate counsel was ineffective for not raising claims (1) through (4) on direct appeal.

Despite the potential procedural bar, the district court conducted an evidentiary hearing of Beehn's claims. The evidence adduced at the hearing consisted of the bill of exceptions from Beehn's pretrial, plea, and sentencing proceedings; depositions of Beehn and each of his prior attorneys; transcripts of Beehn's telephone calls from jail; and a copy of the court file for all of the proceedings at the trial level.

Beehn testified that all of his attorneys told him that his only option was to enter into a plea agreement. Beehn claims that each of his attorneys told him that there were no available defenses for his charges. Specifically, Beehn claims that Balsiger, as well as Martin and McCarthy, told him that the defense of self-defense was not available in Nebraska. Beehn further claims that Balsiger erroneously advised him that any communications between Beehn and his wife were privileged and could not be used against him. Beehn contends that he,

Beehn, maintained this belief throughout his case until October 2013, when the court entered an order denying Beehn's assertion of spousal privilege.

Additionally, Beehn contends that his trial attorneys deposed only two witnesses and failed to investigate the existence of other witnesses that may have been beneficial to his case. Beehn further contends that counsel never advised him that by entering a plea agreement, he waived his right to appeal from adverse pretrial rulings. Lastly, Beehn contends that Melia never met with him to discuss his appeal, but that one of Melia's assistants advised him that an excessive sentence claim was the only claim available on appeal.

Beehn's initial trial counsel, Balsiger, disagreed with Beehn's allegations. Balsiger, who had been practicing criminal law since 1973, explained that he first met with Beehn on December 3, 2012, within a few days of the charges being filed. Balsiger testified that he and Beehn specifically discussed the possibility of asserting a defense such as justification of the use of force, which Balsiger thought would at least be a possible defense based on the limited information he had at that time. Balsiger further explained that during their first meeting, he also spoke with Beehn about the possibility of asserting a privilege for communications between Beehn and his wife, but told Beehn that "it may not be valid" based on the circumstances. Balsiger testified that he specifically advised Beehn "not to discuss the facts of this case with his wife or anyone else." Balsiger's testimony is corroborated by a December 6 recorded jail telephone conversation between Beehn and his wife in which the following exchange occurred:

[Beehn]: The lawyer say anything?

[Beehn's wife]: I talked to him after the deal, he questioned me on what I know and what happened. And then he told me that we need to not talk amongst ourselves about the whole case or something of that sort.

[Beehn]: Yeah, he told me that too.

Balsiger explained that he deposed at least two witnesses in the case: Ruroede, the female involved in the fight with Beehn's wife, and one of the officers involved in the investigation. Balsiger did not recall that Beehn had given him the names of any other witnesses to contact.

Melia, who represented Beehn for approximately 1 month after Balsiger's representation, also disagreed with Beehn's allegations. Melia explained that during his time as Beehn's trial counsel, he met with Beehn twice and also spoke with him on the telephone to discuss the case.

Melia testified that he discussed possible defenses with Beehn, including self-defense and defense of others. Melia noted that there were obvious obstacles to pursuing either defense, because it appeared that Beehn's wife was the aggressor in the fight. Melia also noted that a self-defense claim was further complicated by the fact that on at least one occasion, Beehn said the gun discharged accidentally, which would negate the defense altogether. Melia also explained that he told Beehn not to discuss his case over the telephone with anyone else and that he never gave Beehn the impression that Beehn's communications with his wife were privileged and could not be used against him. Melia also testified that he did not recall any witnesses that may have been available to contact other than Beehn, his wife, Ruroede, and the two victims.

McCarthy, who represented Beehn at the time of his pleas, also disagreed with Beehn's claims. McCarthy, who had been practicing law since 1989 with extensive experience in conducting jury trials, testified that he and Beehn discussed the issue of spousal privilege. McCarthy testified that he repeatedly told Beehn that his communications with his wife were not privileged. McCarthy contended that Beehn's assertion to the contrary is not true. He explained that the letter Beehn sent to his wife, which served as the basis for the tampering charge, was sent after Martin and McCarthy specifically advised Beehn that such communications were not privileged.

McCarthy further testified that he and Martin, McCarthy's cocounsel, also looked into available defenses, including self-defense and defense of others. McCarthy explained that they considered defense of others based on the theory that Beehn was protecting his wife, but their attempt to pursue this option was complicated by the fact that Beehn kept changing his story and, at one point, said the gun discharged accidentally. McCarthy also believed that such defense would have had credibility problems with Beehn.

McCarthy explained that because Beehn was intoxicated on the night in question, he kept changing his story. Additionally troubling was the fact that Beehn continued to try to persuade his wife to change her story. McCarthy testified that in light of these issues, he believed defense of others might not be successful. McCarthy testified that he explained these concerns to Beehn but never advised Beehn that the defense was unavailable.

Martin testified that Beehn agreed to the plea agreement and that Beehn knew what the pleas were and knew the rights he was giving up by taking the plea agreement. This was explained to Beehn by counsel, as was counsel's opinion that self-defense and defense of others would not be successful defenses. Martin testified that after he advised Beehn that his version of the facts would not fit self-defense or defense of others, Beehn's story changed several times.

As noted earlier, following Beehn's plea agreement which resulted in a conviction and prison sentence, Beehn, with the assistance of Melia, filed a direct appeal. The direct appeal was handled primarily by Melia's chief deputy public defender, Christopher Bellmore.

During the postconviction proceeding, Melia testified that on direct appeal, he and Bellmore did not see any viable ineffective assistance of counsel claims from their review of the record. Melia further indicated that even if they had been inclined to raise claims of ineffective assistance of counsel,

they would have been hesitant to do so given that Melia was one of Beehn's trial attorneys.

Melia did not recall meeting with Beehn, but did recall that Bellmore generally met with appellate clients because he lived closer than Melia to the State penitentiaries. The record demonstrates that Beehn and appellate counsel did meet in person and spoke about excessive sentencing issues and claims of ineffective assistance of counsel.

According to Beehn, he was advised by appellate counsel that the record did not support a claim of ineffective assistance of counsel on direct appeal. Therefore, Beehn's only assignment of error on direct appeal was in regard to excessive sentences. Beehn initiated a postconviction proceeding and was granted an evidentiary hearing. The district court subsequently denied Beehn's postconviction motion following the evidentiary hearing.

The district court concluded that each of Beehn's trial attorneys advised him of potential defenses, including self-defense and defense of others, and that the testimony on the matter was credible and refuted Beehn's allegation that he was not so advised. Moreover, as Beehn's trial attorneys explained, the district court found that it was unlikely that such defenses would have been successful, given the evidence against Beehn and all of the events that transpired while Beehn was in custody.

The court then noted that each of Beehn's trial attorneys advised him not to speak with anyone about the case, and specifically advised him that the spousal privilege may not, or would not, protect communications between Beehn and his wife. The court found that the testimony of Beehn's attorneys on the matter was credible and refuted Beehn's allegation that he was not so advised.

The court further noted that Beehn's trial attorneys contacted all of the witnesses known to them and made efforts to seek out additional witnesses and evidence. These efforts

proved to be unhelpful, or in some instances "detrimental," to Beehn's case.

The court found that before entering his pleas, Beehn was advised of the rights he was waiving and was advised that he would be waiving any defenses that may be available. The court also found that Beehn's trial attorneys, Martin and McCarthy, specifically advised Beehn that if he entered the pleas, he would be waiving his right to appeal from the court's pretrial rulings.

Lastly, the court noted that Beehn would have been unsuccessful had he raised his postconviction claims of ineffective assistance of trial counsel on direct appeal and that thus, his appellate counsel was not ineffective for failing to raise those claims. And because appellate counsel had served as Beehn's trial counsel for a period of time, the court believed there would have been a question as to whether appellate counsel could have raised the ineffective assistance of trial counsel claims.

## ASSIGNMENT OF ERROR

Beehn assigns, consolidated and restated, that the trial court erred in denying his motion for postconviction relief in which he alleged the ineffective assistance of both trial and appellate counsel.

## STANDARD OF REVIEW

[1] In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. An appellate court upholds the trial court's findings unless they are clearly erroneous.[1]

[2,3] A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact.[2] When

---

[1] *State v. McGuire*, 299 Neb. 762, 910 N.W.2d 144 (2018).

[2] *Id.*

reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*,[3] an appellate court reviews such legal determinations independently of the lower court's conclusion.[4]

## ANALYSIS

As stated above, when appearing before the district court, Beehn's postconviction claims were that (1) trial counsel was ineffective for failing to advise Beehn about the defenses of self-defense and defense of others under §§ 28-1409 and 28-1410; (2) trial counsel was ineffective for failing to advise Beehn that by entering his pleas, he would be waiving his right to appeal from pretrial rulings; (3) trial counsel was ineffective for failing to interview and depose witnesses and for failing to investigate the prospect of additional witnesses beyond those listed in the police reports; (4) trial counsel was ineffective for incorrectly advising Beehn that all communications between Beehn and his wife were privileged and could not be used against Beehn in the prosecution of his criminal charges; and (5) appellate counsel was ineffective for not raising claims (1) through (4) on direct appeal. Additionally, Beehn now claims that appellate counsel was ineffective for failing to meet with him.

[4,5] Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable.[5] The Nebraska Postconviction Act is intended to provide relief in those cases

---

[3] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[4] *State v. McGuire, supra* note 1.

[5] *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018), *disapproved on other grounds, State v. Allen*, 301 Neb. 560, 919 N.W.2d 500.

where a miscarriage of justice may have occurred; it is not intended to be a procedure to secure a routine review for any defendant dissatisfied with his or her sentence.[6]

[6,7] To establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington*, to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.[7] Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case.[8] A showing of prejudice to the defense requires a demonstration of reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.[9]

[8] Trial counsel is afforded due deference to formulate trial strategy and tactics.[10]

[9,10] In a claim for ineffective assistance of counsel, the likelihood of the defense's success should be considered with other factors such as the likely penalties the defendant would face if convicted at trial, the relative benefit of the plea bargain, and the strength of the State's case.[11] Self-serving declarations that a defendant would have gone to trial are not enough to warrant a hearing; a defendant must present objective evidence showing a reasonable probability that he or she would have insisted on going to trial.[12]

[11] When a conviction is based upon a guilty plea, the prejudice requirement for an ineffective assistance of counsel

---

[6] *Id.*

[7] See *Strickland v. Washington, supra* note 3.

[8] See *State v. Allen, supra* note 5.

[9] *State v. Blank*, 239 Neb. 188, 474 N.W.2d 689 (1991).

[10] *State v. McGuire, supra* note 1.

[11] *State v. Yos-Chiguil*, 281 Neb. 618, 798 N.W.2d 832 (2011).

[12] *State v. Barrera-Garrido*, 296 Neb. 647, 895 N.W.2d 661 (2017).

claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty.[13]

The likelihood of the defense's success had the defendant insisted on going to trial is relevant to the prejudice analysis.[14] It is relevant to the consideration of whether a rational defendant would have insisted on going to trial.[15] The likelihood of the defense's success had the defendant gone to trial should be considered along with other factors, such as the likely penalties the defendant would have faced if convicted at trial, the relative benefit of the plea bargain, and the strength of the State's case.[16]

*Failure to Advise Beehn About*
*Potential Defenses.*

Beehn first contends that trial counsel failed to advise him of potential defenses, including self-defense and defense of others, in regard to his case.

Under subsection (1) of § 28-1409, "[s]ubject to the provisions of this section and of section 28-1414, the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person . . ." except that under subsection (4) of § 28-1409,

[t]he use of deadly force shall not be justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily harm, kidnapping or sexual intercourse compelled by force or threat, nor is it justifiable if:

---

[13] *State v. Armendariz*, 289 Neb. 896, 857 N.W.2d 775 (2015).

[14] See *State v. Yos-Chiguil, supra* note 11.

[15] *Id.*

[16] *Id.*

(a) The actor, with the purpose of causing death or serious bodily harm, provoked the use of force against himself in the same encounter; or

(b) The actor knows that he can avoid the necessity of using such force with complete safety by retreating or by surrendering possession of a thing to a person asserting a claim of right thereto or by complying with a demand that he abstain from any action which he has no duty to take . . . .

Section 28-1410 similarly states in part:

(1) Subject to the provisions of this section and of section 28-1414, the use of force upon or toward the person of another is justifiable to protect a third person when:

(a) The actor would be justified under section 28-1409 in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect.

Under Neb. Rev. Stat. § 28-1414(1) (Reissue 2016), "[t]he justification afforded by sections 28-1409 to 28-1412 is unavailable when: (a) The actor's belief in the unlawfulness of the force or conduct against which he employs protective force or his belief in the lawfulness of an arrest which he endeavors to effect by force is erroneous[.]"

As noted above, Balsiger, Beehn's first defense attorney, testified that he met with Beehn within a few days of the charges first being filed. Balsiger specifically discussed with Beehn the possibility of asserting a defense such as justification for the use of force, which Balsiger thought would be at least a possible defense based on the information he had at that time.

Melia, who briefly represented Beehn following Balsiger's representation, met with Beehn twice and also spoke with him on the telephone to discuss the case. The record indicates that Melia discussed possible defenses with Beehn, including self-defense and defense of others. However, Melia noted that there

were obstacles to pursuing either defense, because it appeared that Beehn's wife was the aggressor in the fight. Moreover, Melia noted that a self-defense claim was further complicated by the fact that on at least one occasion, Beehn claimed that the gun discharged accidentally, which Melia believed would negate the defense altogether.

Following Melia's discharge as counsel, Martin and McCarthy were retained by Beehn. Martin and McCarthy also considered available defenses, including self-defense and defense of others. McCarthy explained that they considered defense of others based on the theory that Beehn was protecting his wife, but that their attempt to pursue this defense was complicated by the fact that Beehn kept changing his story and, at one point, said the gun discharged accidentally. The record demonstrates that McCarthy also had concerns regarding credibility problems with that defense, because Beehn was intoxicated on the night in question and continually changed his story.

McCarthy's concerns were reinforced by the fact that Beehn continued to try to persuade his wife to change her story, which further complicated the strategy of arguing self-defense. McCarthy indicated that in light of such issues, he believed the self-defense strategy might not be successful. McCarthy explained these concerns to Beehn, but the record does not adequately support Beehn's claim that he was advised that the defense was unavailable.

Following repeated discussions with various counsel and the seemingly universal belief of counsel regarding the viability and considerable lack of likelihood of success of a defense in this case, Beehn agreed to enter a plea agreement in order to seek a more lenient sentence.

We affirm the district court's finding that based on the evidence contained in the record, Beehn was advised by all his attorneys at trial level of the affirmative defenses of self-defense and defense of others. The record demonstrates that the employment of any potential affirmative defense was hampered

by Beehn's ever-changing story of the events of the evening in question, as well as his actions and communications during incarceration.

Beehn alleges that trial counsel was universally ineffective by not informing him of the availability of the defense of self-defense, but the record contradicts that claim. As such, Beehn has not shown that his trial counsel's performance was deficient.

Beehn's first assignment of error is without merit.

### Failure to Advise Beehn of Effect of Pleas on Right to Appeal.

Beehn next contends that counsel did not advise him of the effect that entering into a plea agreement would have on his ability to appeal adverse preliminary rulings of the trial court. There is no merit to this claim.

According to Martin and McCarthy, Beehn's attorneys at the time he entered into the plea agreement, Beehn was advised that if he pled guilty, he would not be able to appeal any adverse rulings made during the pretrial process. McCarthy testified that he also advised Beehn of the rights he had and that he would be giving up those rights if he pled guilty. Further, McCarthy testified that based on the communications McCarthy had with Beehn, McCarthy was under the impression that Beehn understood his rights as they had been advised to him by McCarthy.

Martin testified that Beehn agreed to the plea agreement and that Beehn knew what the pleas were and knew the rights he was giving up by taking the plea agreement. The details of the plea agreement, and the resulting waiver of Beehn's rights, were explained to Beehn by counsel. Counsel also explained its opinion that the strategies of self-defense and defense of others would not be successful.

Based on the record, it is clear that counsel's performance was not deficient. Beehn's second claim of ineffective assistance of counsel is without merit.

*Failure to Locate, Interview,*
*or Depose Witnesses.*

Beehn next argues that his trial counsel failed to locate, interview, or depose potential witnesses to the events of November 24, 2012. According to Beehn, Balsiger, as the first trial counsel, conducted depositions of Ruroede and the investigating officer. But Beehn suggests that Melia failed to conduct any interviews with witnesses. As for Martin and McCarthy, Beehn contends that they failed to conduct depositions. Beehn concedes that Martin and McCarthy's intern interviewed two of the three witnesses Beehn identified, but that he failed to depose them.

Further, Beehn contends that 10 additional witnesses were added by the State after Martin and McCarthy engaged in the representation of Beehn. According to Beehn, Martin and McCarthy failed to depose any of the 10 new witnesses. Beehn contends that had trial counsel been more diligent in deposing and interviewing witnesses, Beehn's defense theory would have "come into better focus."[17]

As the record reflects, Balsiger did depose two of the State's witnesses in preparation for trial. During the brief time in which Melia represented Beehn, Melia did not conduct interviews with witnesses to Beehn's case.

McCarthy testified that he did not take any additional depositions in Beehn's case. McCarthy contended that either he or his staff did interview additional witnesses not identified in the police reports but located based on information Beehn provided to him. McCarthy indicated that his staff interviewed those witnesses and recorded their statements. Without disclosing content, McCarthy noted that the witnesses interviewed were determined to be extremely detrimental to Beehn's case and were not helpful in any manner.

Additionally, McCarthy noted that the case and the credibility of the defense was further hampered when the State filed the charge of tampering with a witness, which arose from

---

[17] Brief for appellant at 20.

the discovery of the letter Beehn had sent to his wife. In the letter, Beehn sought to have his wife locate witnesses and "pay what ever [sic] they want." The letter from Beehn further suggested to his wife that she give testimony of events that was inconsistent with her previous recitation of events given to the police.

Further, the record demonstrates that Martin, McCarthy, and their investigator went to the scene of the shooting to try to locate possible video surveillance cameras that may have recorded the incident. However, according to McCarthy's testimony, they were unable to locate any working cameras near the scene.

As for the 10 witnesses added by the State, Martin testified that they were all jailhouse witnesses located by the prosecution. Beehn fails to demonstrate any prejudice that resulted from failing to depose these witnesses, especially in light of the overwhelming evidence of guilt presented by the State.

McCarthy's testimony, however, reflected concerns regarding Beehn's possession of white supremacist materials while incarcerated, as well as Beehn's derogatory statements toward those of Latin American descent. Given the fact that the victims were of Latin American descent, McCarthy testified that he was concerned with the effect that Beehn's jailhouse behavior would have on a jury.

Based on the foregoing discussion, it is clear that trial counsel conducted a lengthy investigation and sought potential witnesses. The fact that the witnesses were not beneficial to Beehn's case, or altogether lacked credibility as a result of Beehn's offer of remuneration, does not fall on trial counsel. Beehn's assignment of error is without merit.

*Advice Concerning Issues of Privilege*
*Regarding Communications Between*
*Beehn and His Wife.*

Beehn testified that before the trial court entered its ruling in October 2013, in which it denied his motion to suppress statements made to his wife, he believed that his communications

with her were privileged. Beehn testified that he knew the State would listen to his telephone calls with his wife, but that he did not know the State could use statements made in those calls against him. Beehn contends that trial counsel led him to believe his communications with his wife were privileged. Beehn concedes that the communications with his wife were, in fact, not subject to spousal privilege.[18]

Beehn's claims that all four of his trial counsel informed him that the communications in question were privileged are directly refuted by trial counsel. According to the testimony of each attorney, Beehn was repeatedly advised not to discuss his case with anyone other than his attorney at the time. Beehn admitted as much in a December 6, 2012, telephone conversation with his wife. At one point, Beehn's wife stated in part, "[the attorney] told me that we need to not talk amongst ourselves about the whole case or something of that sort." To which Beehn responded, "Yeah, he told me that too." It is of particular note that this telephone conversation occurred only 3 days after Balsiger met with Beehn for the first time.

Melia testified that he did not remember the specific details of his conversation with Beehn. However, Melia stated that it was his practice to advise clients not to speak about their cases over the telephone, because in his experience, the prosecution routinely listened to jail telephone conversations.

McCarthy testified that he explained the nature of the privilege within the first 5 minutes of his and Beehn's first meeting and advised Beehn of the fact that his communications with his wife were not privileged. McCarthy went on to indicate that he and Martin repeatedly pleaded with Beehn to stop discussing his case with others, including his wife, and went so far as to send Beehn written correspondence to that effect.

Based on the evidence in the record contradicting Beehn's claim, this assignment of error is without merit.

---

[18] See Neb. Rev. Stat. § 27-505 (Reissue 2016). See, also, *State v. Cowling*, No. A-92-744, 1993 WL 183609 (Neb. App. June 1, 1993) (not designated for permanent publication).

*Failure of Appellate Counsel to
Raise Ineffective Assistance
of Trial Counsel Claim.*

Beehn assigns that he received ineffective assistance of appellate counsel due to appellate counsel's failure to raise the claim of ineffective assistance of trial counsel. The State does not argue that Beehn failed to preserve this claim, and thus, we turn to our *Strickland* analysis.

As noted above, *Strickland v. Washington* consists of a two-prong analysis.[19] In order to prevail on an ineffective assistance of counsel claim, the defendant must satisfy both prongs of the *Strickland* analysis, that defense counsel's performance was deficient and that the deficient performance actually prejudiced the defendant's defense. The two prongs of the ineffective assistance test, deficient performance and prejudice, may be addressed in either order.[20] To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[21]

Assuming, without deciding, that appellate counsel's actions were deficient for failing to raise a claim of ineffective assistance of counsel on direct appeal, it is clear that Beehn has not suffered any resulting prejudice. Following the denial of his direct appeal, Beehn sought to collaterally attack his convictions through this postconviction proceeding. Despite not raising his ineffective assistance of counsel claims on direct appeal as procedurally required when appellate counsel is different from trial counsel, the district court nevertheless allowed Beehn to raise the claims and granted Beehn an evidentiary hearing to expound on those claims.

As Beehn did not suffer prejudice, this assignment of error is without merit.

------

[19] See *Strickland v. Washington, supra* note 3.

[20] *State v. Poe*, 284 Neb. 750, 822 N.W.2d 831 (2012).

[21] *State v. McGuire, supra* note 1.

*Failure of Appellate Counsel*
*to Meet With Beehn.*

Lastly, Beehn contends that appellate counsel failed to meet with him or discuss his appeal. Beehn argues that appellate counsel took an extremely narrow view on direct appeal by only assigning as error that Beehn received excessive sentences.

By Beehn's own admission, he recalled an assistant from the Madison County public defender's office who visited with him for the direct appeal. According to Melia, Bellmore, his chief deputy public defender, was tasked with meeting clients incarcerated in the State penitentiaries. As such, the record is clear that appellate counsel did in fact meet with Beehn.

In regard to Beehn's claim that appellate counsel "took an extremely narrow view on Beehn's direct appeal,"[22] Melia testified that he discussed with Beehn the issues of excessive sentences and the lack of evidence for an ineffective assistance of counsel claim. Melia further testified that while discussing the possibility of a claim of ineffective assistance of counsel as it related to trial counsel, and any promise of leniency for which there was no evidence, Beehn was offered the option to seek new appellate counsel. Beehn did not do so.

The district court noted that on the issue of credibility, it relied more heavily upon the testimony of appellate counsel than on Beehn's testimony, "due to Beehn's history of willingness to change his facts to meet the circumstances of the moment." Further, appellate counsel's testimony was consistent throughout as to the facts of the case.

The district court's decision was not clearly erroneous. Beehn's final assignment of error is without merit.

## CONCLUSION

The decision of the district court denying Beehn's motion for postconviction relief is affirmed.

Affirmed.

Freudenberg, J., not participating.

---

[22] Brief for appellant at 23.