IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. DE LOS SANTOS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ANTHONY DE LOS SANTOS, APPELLANT.

Filed November 21, 2023.    No. A-22-965.

Appeal from the District Court for Scotts Bluff County: ANDREA D. MILLER, Judge. Affirmed.

William E. Madelung, of Madelung Law Office, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, Erin E. Tangeman, and Braden Dvorak, Senior Certified Law Student, for appellee.

PIRTLE, Chief Judge, and MOORE and ARTERBURN, Judges.

MOORE, Judge.

## I. INTRODUCTION

Anthony De Los Santos appeals from the order of the district court for Scotts Bluff County, denying his motion seeking postconviction relief following an evidentiary hearing. In that motion, De Los Santos alleged, among other things, that his trial counsel provided ineffective assistance with respect to the State's alleged breach of an agreement concerning De Los Santos' waiver of a preliminary hearing and by failing to call De Los Santos' wife as a witness at trial. We affirm.

## II. STATEMENT OF FACTS

### 1. CONVICTION AND SENTENCE

In December 2015, the State filed a criminal complaint in county court, charging De Los Santos with burglary, a Class IIA felony. The charges stemmed from a forced entry and theft on

- 1 -

December 25 at a Burger King restaurant. De Los Santos waived his right to a preliminary hearing in county court, and the case was bound over to district court. In August 2016, the State filed an information in district court, charging De Los Santos with burglary and with being a habitual criminal.

A jury trial was held in January 2017. Evidence presented at the trial showed that police investigated the burglary of a Burger King restaurant after the discovery of a safe found in a rural location with items including Burger King coupons. The investigation showed that someone had forced open the drive-through window of the restaurant and an office door, stealing the safe from the office and about $6,200. At the time, some restaurant employees knew that the restaurant's security alarm system was not working properly. Surveillance footage of the burglary showed a suspect wearing a ski mask break into the restaurant's office and remove the safe. The suspect had extremely thick eyebrows. The surveillance video was played for the jury at trial. During the investigation, police identified De Los Santos as someone who resembled the suspect shown in the video. De Los Santos' sister was an employee of the restaurant; she eventually identified De Los Santos to police from pictures of the surveillance footage and testified at trial that the suspect in the surveillance video "looked like him."

The jury found De Los Santos guilty of burglary. Following an enhancement hearing, the district court found that De Los Santos was a habitual criminal. The court sentenced him to 12 to 20 years' incarceration, which included a mandatory minimum of 10 years due to the habitual criminal enhancement, and the court gave him credit for 327 days' time served. See *State v. De Los Santos*, No. A-17-256, 2018 WL 3045501 (Neb. App. June 19, 2018) (selected for posting to court website).

## 2. DIRECT APPEAL

De Los Santos, represented by new counsel, filed a direct appeal, asserting that there was insufficient evidence to sustain his conviction, that the State induced him to waive his right to a preliminary hearing in return for a promise not to file an additional charge, that he received ineffective assistance of trial counsel in various regards, and that the district court imposed an excessive sentence. This court affirmed De Los Santos' conviction and sentence and found that he was procedurally barred from challenging the validity of his waiver of the preliminary hearing in the county court. We found his claims of ineffective assistance of trial counsel to be without merit or the record to be insufficient to review them on direct appeal. The claims for which the record was insufficient to review on direct appeal were that his trial counsel was ineffective for failing to challenge the State's filing of the habitual criminal charge and failing to call De Los Santos' wife as an alibi witness. See *State v. De Los Santos*, No. A-17-256, 2018 WL 3045501 (Neb. App. June 19, 2018) (selected for posting to court website).

## 3. POSTCONVICTION PROCEEDINGS

### (a) Postconviction Motion

On March 19, 2019, De Los Santos, then self-represented, filed a postconviction motion. He alleged that his trial counsel was ineffective for failing to challenge the State's alleged breach of an agreement to remove the habitual criminal allegation in exchange for De Los Santos waiving

the preliminary hearing and failing to call his wife as a witness at trial in support of his alibi defense.

The district court later appointed postconviction counsel for De Los Santos and found that De Los Santos was entitled to an evidentiary hearing on the two claims of ineffective assistance of trial counsel set forth above.

### (b) Evidentiary Hearing

On August 23, 2023, an evidentiary hearing was held before the district court. De Los Santos' postconviction attorney indicated that the parties had a "joint submission" of evidence, and the court received the exhibits offered, including depositions of De Los Santos, his trial counsel, and the trial prosecutor. All three of these deponents testified about their understanding of the plea offer (or alleged agreement) made by the State prior to the preliminary hearing in county court as well as about the decision to call (or not call) De Los Santos' wife as a witness at trial. We summarize their deposition testimony on these issues below.

### (i) Failure to Challenge Breach of Alleged Agreement

The prosecutor sent De Los Santos' trial counsel an email on the morning of August 4, 2016, regarding a plea offer, which stated:

> This is set for PH at 3:45 pm. The evidence is going to be the same as the PC affidavit that's been on file for more than 6 months. [De Los Santos is] eligible for habitual, so I want him to wave [sic], I'll give him the B&E, and I won't file the bitch. Someone let me know. Thanks.

The prosecutor described this as a "standard e-mail" he typically sent when a habitual criminal charge was involved, "telling them to waive the preliminary hearing, they can plead to the underlying charge, and [he] won't pursue the habitual enhancement." He confirmed that that had been his intent with the email sent to De Los Santos' trial counsel, although he acknowledged he had not explicitly used the word "plea" in the email. He also clarified that his reference to "B&E" in the email was a reference to the burglary charge that had been filed against De Los Santos. According to the prosecutor, he had never in his career made an offer to drop a habitual criminal enhancement in exchange for a defendant's waiver of a preliminary hearing. When the prosecutor was asked whether he perceived any confusion in his conversations with De Los Santos' attorney as to "what the offer was," he replied, "No, [trial counsel] and I had done cases before. He's familiar with the lingo. I think he was dead on when he said that that was his interpretation of it and apparently tried to get that across to . . . De Los Santos."

The prosecutor testified that De Los Santos could have accepted the plea offer all the way up until trial. Arraignment in the district court was held on August 12, 2016, and the prosecutor noted that neither De Los Santos nor his trial counsel had objected at that time to the filing of the information that included the habitual criminal charge. On December 16, the prosecutor forwarded De Los Santos' attorney an email from December 8, reiterating the prosecutor's original offer. The December 8 email stated:

- 3 -

I said from the beginning that he could take the B&E and I wouldn't pursue habitual. I filed the habitual count when I first filed in District Court just so it would be there. I will dismiss and agree not to pursue the habitual. Plus, I'll agree to remain silent at sentencing.

De Los Santos' attorney never responded to the offer, and the case proceeded to trial.

The testimony of De Los Santos' trial counsel about the plea offer and his interpretation of it were consistent with the prosecutor's. De Los Santos' attorney testified that he had planned on "doing the preliminary hearing" in this case until he received the prosecutor's email in the morning on the day of the hearing (which was scheduled for the afternoon). After receiving the email, he gave De Los Santos a copy of the email and spoke with him about it. With respect to the attorney's understanding of the email, he testified, "I interpreted it that if [De Los Santos] would agree to plead guilty to the burglary charge, that [the prosecutor] would not pursue the habitual criminal. And as part of it, [the prosecutor] had also asked that we waive the preliminary hearing." De Los Santos' attorney testified that he told De Los Santos that the email was:

[K]ind of a plea offer but it's really not a plea offer because it's really too early to make any decision, but this is what [the prosecutor] is thinking at this point. And because habitual criminal has come in now, that he's going to be probably asking you to plead guilty to the burglary and in exchange they won't pursue the habitual.

He also told De Los Santos that the habitual criminal charge "has entered into the case," that the prosecutor did not have to offer any deal at all, but that if De Los Santos waived the preliminary hearing, it might make the process "a little bit easier." According to trial counsel, De Los Santos did not want to plead guilty to anything but indicated that he was willing to waive the preliminary hearing.

When the information with the habitual criminal charge was filed in district court, De Los Santos' trial counsel felt that the prosecutor "ha[d] the right to file it [the habitual criminal charge]." He indicated that he told De Los Santos, "[I]f we're going to work something out, it [the habitual criminal charge] could go away." Trial counsel was asked whether De Los Santos raised any concerns about the habitual criminal charge having been filed "in light of [the prosecutor's] e-mail to [trial counsel] prior to the preliminary hearing." Trial counsel testified that De Los Santos "may have" had some concern and that he thought his response had been to tell De Los Santos to re-read the prosecutor's email. In his testimony, trial counsel noted that the email did not say that the prosecutor would drop the habitual criminal charge in exchange for De Los Santos waiving the preliminary hearing. De Los Santos' attorney testified that he also spoke to De Los Santos about the December 2016 email reiterating the prosecutor's offer to dismiss the habitual criminal charge if De Los Santos pled guilty or no contest to the burglary charge and also offering to remain silent at sentencing. According to trial counsel, De Los Santos again refused to plead to any charge.

In his deposition, De Los Santos presented a view of the prosecutor's offer at odds with the position taken by the prosecutor and De Los Santos' trial counsel in their depositions. With respect to the offer as set forth in the prosecutor's August 2016 email, De Los Santos testified that his trial counsel told him, "[I]f you waive the preliminary hearing at least you don't have the habitual hanging over your head." De Los Santos also claimed that his attorney advised him:

I would waive it if I was you because the court doesn't need much to bound [sic] you over and by your sister identifying you in a video, you're going to get bound over anyway. So if I was you, I would waive my preliminary hearing. That way the bitch don't be waiving over your head.

According to De Los Santos, he followed his attorney's advice, stating, "He told me to waive the preliminary hearing like so I waived it just like the paper said and they wouldn't file the habitual criminal."

De Los Santos also testified about his interaction with his trial counsel at the time of the arraignment in district court. According to De Los Santos, when he saw that the information included the habitual criminal charge, he told his attorney, "I thought we waived the preliminary hearing so that the habitual can go away." He testified that his attorney told him the habitual criminal charge would go away if he accepted the plea offer, that during the arraignment was "not the time to talk about this," and that his attorney would visit him later at the jail. With respect to the prosecutor's December 2016 email, De Los Santos testified that his trial counsel never spoke to him about it.

During cross-examination, De Los Santos expressed his understanding of the plea offer, stating, "There was no pleading guilty. I was waiving the preliminary hearing and that [the prosecutor] would only charge me with the B and E. That's the same way [trial counsel] told me, that's the way I took it." On redirect, De Los Santos again expressed his understanding of the "plea agreement" to be that if he waived the preliminary hearing, the State would not pursue the habitual criminal charges. And, he again stated that his trial counsel had advised, "I would waive it because at least the habitual is gone and you're only facing the burglary," and that he took this advice.

### (ii) Failure to Call De Los Santos' Wife as Trial Witness

At some point, De Los Santos' trial counsel filed a notice of an alibi defense for De Los Santos. The prosecutor discussed his investigation of the alibi defense claim in his deposition. When asked about his understanding of the proposed alibi defense, the prosecutor noted that at the pretrial hearing, De Los Santos' trial counsel mentioned having added a witness and "mentioned something about Carriage or Wagon Wheel." During his investigation, the prosecutor learned, contrary to the claim made by De Los Santos' wife in her pretrial deposition, that neither De Los Santos nor his wife stayed at the "Carriage Motor Inn" in Colorado in December 2015 (when the burglary occurred) or in January 2016.

The prosecutor forwarded the evidence uncovered during his investigation of the alibi defense to De Los Santos' trial counsel. This evidence included contact with De Los Santos' cousin, who refuted the wife's claim that he gave De Los Santos a ride from Nebraska to the motel in Colorado; and contact with the motel owner, who could not confirm that De Los Santos and his wife were there in December 2015, as well as supporting records from the motel. The prosecutor did not obtain credit card records refuting the wife's claims that she used her card for the hotel room in December 2015 until after trial. The prosecutor also received recordings of jail phone conversations between De Los Santos and his wife and an intercepted letter from De Los Santos to his sister telling her to take the stand during his trial and claim that "it was a case of mistaken identity" after she had previously identified De Los Santos in security footage to police. Because

of the inconsistencies between the pretrial deposition testimony of De Los Santos' wife and the information the prosecutor discovered, he informed De Los Santos' trial counsel he would be filing perjury charges if the wife testified at trial. De Los Santos' attorney was also made aware that the prosecutor had witnesses ready to rebut the claims De Los Santos' wife would have made had she testified at trial.

De Los Santos' trial counsel also testified about the alibi claim. In 2015, De Los Santos and his wife were separated, and she lived in Colorado. De Los Santos claimed he was visiting her at a motel in Colorado at the time of the burglary, and trial counsel initially planned to have the wife testify at trial. However, when he investigated the alibi claim, he found there were no records showing that De Los Santos and his wife stayed at the claimed motel at the time of the burglary. De Los Santos claimed he was "on very[,] very good terms" with the owners of the motel, but when trial counsel contacted the wife of the motel owner, she had no recollection of De Los Santos' wife and she "didn't find the records" supporting the claimed alibi. Trial counsel was aware of recorded calls between De Los Santos and his wife about De Los Santos' claim that his cousin gave him a ride to Colorado, which claim turned out to not be true. Trial counsel was also aware of contradictory statements by De Los Santos' wife about when they actually stayed at the motel, as well as the fact that the prosecutor was seeking credit card records to confirm whether De Los Santos and his wife had stayed at the motel at the time of the robbery.

De Los Santos' trial counsel testified that he discussed with De Los Santos the contradictory information uncovered and the risk of perjury charges against the wife if she did testify. According to trial counsel, he and De Los Santos "decided that it would be best probably that [the wife] not testify." De Los Santos' wife attended the trial, and trial counsel testified that if De Los Santos had demanded that she testify, trial counsel would have called her as a witness. Trial counsel stated that De Los Santos never indicated to him during trial that he had changed his mind and wanted his wife to testify.

In De Los Santos' deposition, when asked about his claimed alibi, he stated that he arrived at the motel in Colorado on either December 21, 22, or 23, 2015, and stayed for 3 to 4 months. According to De Los Santos, he performed handyman services at the motel as payment for rent. De Los Santos testified that he asked his trial counsel to contact the husband of the motel-owning couple, but that his counsel only contacted the wife who had assured counsel that they would never allow anyone to stay at the motel in exchange for labor. De Los Santos also claimed his trial counsel never discussed the State's evidence with him in detail and did not discuss "the pros and cons of going to trial versus taking an agreement." De Los Santos did indicate that he had seen police reports and testified that his trial counsel showed him a video of an investigator interviewing his sister about the case.

With respect to his wife testifying at trial, De Los Santos confirmed that his trial counsel told him the prosecution had information contradicting the alibi and told De Los Santos, "I don't think we should use her" because of the potential perjury charges. De Los Santos testified, however, that he instructed trial counsel to call his wife as a witness and that he wanted her to testify, despite the risk of perjury charges.

(c) Ruling

On November 28, 2022, the district court entered an order denying De Los Santos' claims for postconviction relief. The court found both remaining ineffective assistance of counsel claims to be without merit. With respect to the first claim, the court found that De Los Santos never accepted the plea agreement offered to him by the State. Accordingly, there was no agreement to breach and De Los Santos had not shown that his trial counsel was ineffective. As to the second claim, the court found that trial counsel's decision not to call De Los Santos' wife as a witness was a matter of trial strategy or was because her testimony would have been subject to potential perjury charges. Thus, De Los Santos had not shown deficient performance by his trial counsel. The court also found that De Los Santos had failed to show a reasonable probability that calling his wife as a witness would have caused a different result at trial.

De Los Santos then perfected the present appeal to this court.

## III. ASSIGNMENTS OF ERROR

De Los Santos asserts that the district court erred in finding he was not entitled to postconviction relief on the issue of ineffective assistance of trial counsel (1) as to the breach of the agreement to waive the preliminary hearing in exchange for removing the habitual criminal enhancement and (2) for failing to call his wife as a defense witness.

## IV. STANDARD OF REVIEW

In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. *State v. Ellis*, 311 Neb. 862, 975 N.W.2d 530 (2022). An appellate court upholds the trial court's findings unless they are clearly erroneous. *Id.*

Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. *Id.* When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id.* With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Ellis, supra*.

## V. ANALYSIS

### 1. GENERAL LEGAL PRINCIPLES

Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable. *State v. Galindo*, 315 Neb. 1, 994 N.W.2d 562 (2023). To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Galindo, supra*. An appellate court may address the two prongs of the ineffective assistance of counsel test, deficient performance and prejudice, in either order. *State v. Williams*, 295 Neb. 575, 889 N.W.2d 99 (2017).

To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions. *State v. Huff*, 25 Neb. App. 219, 904 N.W.2d 281 (2017). Trial counsel is afforded due deference to formulate trial strategy and tactics. *State v. Beehn*, 303 Neb. 172, 927 N.W.2d 793 (2019). To show prejudice under the prejudice component of *Strickland v. Washington, supra*, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *State v. Galindo, supra*. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id.*

With these principles in mind, we turn to De Los Santos' claims of ineffective assistance of trial counsel raised in the present appeal.

### 2. FAILURE TO CHALLENGE BREACH OF ALLEGED AGREEMENT

De Los Santos asserts that the district court erred in finding he was not entitled to postconviction relief on the issue of ineffective assistance of trial counsel as to the breach of the agreement to waive the preliminary hearing in exchange for removing the habitual criminal enhancement. De Los Santos has not shown that his trial counsel's performance in this regard was deficient.

The district court referred to the emails between the prosecutor and trial counsel that were discussed in the depositions, noting the prosecutor and trial counsel's testimony that the offer was that if De Los Santos pled to the burglary charge, the State would not pursue the habitual criminal charge and that the prosecutor had also asked that De Los Santos waive the preliminary hearing. The court reviewed the emails exchanged by the attorneys and concluded that the "plain words" of those emails do not show any offer by the State to drop the habitual criminal charge in exchange for waiver of the preliminary hearing. We agree and conclude, as did the district court, that because De Los Santos never accepted the State's plea offer, there was no agreement to be breached. The offer was discussed with De Los Santos at the time of the preliminary hearing and again near the time of the pretrial conference, and he declined to enter a no contest or guilty plea to the burglary charge. Accordingly, there was no agreement to be breached, and De Los Santos' trial counsel could not be deficient in failing to challenge the State's filing of the habitual criminal charge. See *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022) (as matter of law, counsel cannot be ineffective for failing to raise meritless argument to trial court). The district court did not err in denying this claim for postconviction relief.

### 3. FAILURE TO CALL DE LOS SANTOS' WIFE AS TRIAL WITNESS

Next, De Los Santos asserts that the district court erred in finding he was not entitled to postconviction relief on the issue of ineffective assistance of trial counsel for failing to call his wife as a defense witness in support of his alibi defense. The district court noted the evidence about the investigation of the alibi defense by the prosecutor and trial counsel, evidence that trial counsel discussed the issue with De Los Santos prior to trial, and trial counsel's testimony that both De Los Santos and his wife told him they did not want her to testify. The court concluded that De Los

Santos had not shown that his trial counsel performed deficiently because trial counsel decided not to call the wife either as a matter of trial strategy or because of the potential for perjury charges against her. The court also concluded that De Los Santos was not prejudiced because he failed to show a reasonable probability that calling the wife would have caused different result at trial. We agree.

Given the conflicting evidence about De Los Santos' alleged stay in a motel in Colorado at the time of the burglary and the potential for perjury charges against his wife, the decision not to call her as a witness was a reasonable trial strategy. See *State v. Beehn*, 303 Neb. 172, 927 N.W.2d 793 (2019) (trial counsel is afforded due deference to formulate trial strategy and tactics). And, given the strength of the evidence against De Los Santos, he has not shown that having his wife testify that he was in Colorado at the time of the burglary, especially in light of the State's plan to call witnesses to rebut any such testimony, and he has not shown that reasonable probability of a different outcome at trial. See *State v. Galindo*, 315 Neb. 1, 994 N.W.2d 562 (2023) (likelihood of different result must be substantial, not just conceivable). The district court did not err in denying this claim for postconviction relief.

## VI. CONCLUSION

We find no clear error in the factual findings of the district court following the evidentiary hearing. The court did not err in denying De Los Santos' motion for postconviction relief.

AFFIRMED.