Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/25/2022 09:08 AM CST

State of Nebraska, appellee, v.
Derrick U. Stricklin, appellant.

___ N.W.2d ___

Filed December 3, 2021.    No. S-20-681.

1. **Postconviction: Evidence: Witnesses: Appeal and Error.** In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. An appellate court upholds the trial court's findings unless they are clearly erroneous.

2. **Effectiveness of Counsel: Appeal and Error.** Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision.

3. **Postconviction: Constitutional Law.** Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable.

4. **Postconviction: Sentences: Appeal and Error.** The Nebraska Postconviction Act is intended to provide relief in those cases where a miscarriage of justice may have occurred; it is not intended to be a procedure to secure a routine review for any defendant dissatisfied with his or her sentence.

5. **Postconviction: Constitutional Law: Proof.** A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution.

6. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

7. ____: ____. To show that counsel's performance was deficient under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area.

8. **Effectiveness of Counsel: Proof: Words and Phrases: Appeal and Error.** To show prejudice under the prejudice component of the *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.

9. **Effectiveness of Counsel: Proof.** In an ineffective assistance of counsel claim, deficient performance and prejudice can be addressed in either order. If it is more appropriate to dispose of an ineffectiveness claim due to the lack of sufficient prejudice, that course should be followed.

10. **Criminal Law: Evidence: Proof.** To establish an alibi defense, a defendant must show (1) he or she was at a place other than where the crime was committed and (2) he or she was at such other place for such a length of time that it was impossible to have been at the place where and when the crime was committed.

11. **Postconviction: Evidence: Witnesses.** In an evidentiary hearing for postconviction relief, the postconviction trial judge, as the trier of fact, resolves conflicts in evidence and questions of fact, including witness credibility and the weight to be given a witness' testimony.

12. **Evidence: Appeal and Error.** Where competent evidence supports the district court's findings, the appellate court will not substitute its factual findings for those of the district court.

13. **Effectiveness of Counsel: Proof.** Trial counsel's failure to investigate various aspects of the case is not ineffective assistance of counsel, absent prejudice and a specific showing what the investigation would have revealed, what exculpatory evidence would have been discovered, or how such an investigation would have changed the outcome of the trial.

Appeal from the District Court for Douglas County: Shelly R. Stratman, Judge. Affirmed.

Gregory A. Pivovar for appellant.

Douglas J. Peterson, Attorney General, and Erin E. Tangeman for appellee.

Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ., and Steinke and Otte, District Judges.

Funke, J.

## INTRODUCTION

Derrick U. Stricklin appeals from the denial of postconviction relief following an evidentiary hearing. Stricklin asserts his trial counsel was ineffective in failing to present an alibi defense and in failing to investigate and present evidence of other suspects. Stricklin also asserts the district court erred in denying his request to depose expert witnesses. We disagree with Stricklin's arguments and therefore affirm the order of the district court.

## BACKGROUND

In 2013, in a joint trial, a jury convicted codefendants, Stricklin and Terrell E. Newman, on two counts of first degree murder, three counts of use of a deadly weapon to commit a felony, attempted intentional manslaughter, and possession of a deadly weapon by a prohibited person. The district court for Douglas County sentenced both men to life imprisonment for each murder conviction; 15 to 25 years' imprisonment for each use of a deadly weapon to commit a felony conviction; 20 months' to 5 years' imprisonment for the attempted manslaughter conviction; and 15 to 25 years' imprisonment for the possession of a deadly weapon conviction. All sentences were to run consecutively. This court affirmed Stricklin's convictions and sentences on direct appeal.[1]

---

[1] *State v. Stricklin*, 290 Neb. 542, 861 N.W.2d 367 (2015).

Stricklin timely moved for postconviction relief, asserting several claims, which the district court denied without conducting an evidentiary hearing. Stricklin appealed directly to this court.[2] We affirmed the dismissal of the majority of Stricklin's claims, but remanded the matter back to the district court for an evidentiary hearing on two of the claims. The matter remanded to the district court included Stricklin's claims that trial counsel failed to file a notice of alibi and present evidence of his alibi defense and failed to investigate other potential suspects.[3]

The facts adduced at trial are fully set forth in our opinion affirming Stricklin's convictions and sentences.[4] Summarized, on December 2, 2012, Carlos Morales and Bernardo Noriega were shot and killed in a drug transaction at an automobile body shop in Omaha, Nebraska. The State alleged that Stricklin and Newman committed the crimes together. Newman's cell phone records showed that Newman was in communication with Morales and Stricklin on the day of the shootings and that Newman's cell phone was in the area of the murder scene during the relevant timeframe.[5]

The State's primary witness at trial, Jose Herrera-Gutierrez, claimed he was present during the shootings. Based upon information provided by Herrera-Gutierrez, officers compiled photographic lineups containing photographs of Stricklin and Newman. Herrera-Gutierrez identified Stricklin and Newman as the shooters; he testified that he recognized both men from three or four prior visits to the body shop, although he had never learned their names.

Herrera-Gutierrez testified that following a drug transaction, he witnessed Stricklin and Newman draw firearms.[6]

---

[2] Neb. Rev. Stat. § 24-1106(1) (Cum. Supp. 2020).

[3] *State v. Stricklin*, 300 Neb. 794, 916 N.W.2d 413 (2018).

[4] *Id.*; *Stricklin, supra* note 1; *State v. Newman*, 300 Neb. 770, 916 N.W.2d 393 (2018); *State v. Newman*, 290 Neb. 572, 861 N.W.2d 123 (2015).

[5] *Id.*

[6] *Stricklin, supra* note 1.

According to Herrera-Gutierrez, Newman instructed Morales to tell Herrera-Gutierrez and Noriega to lie down. Newman tied Herrera-Gutierrez' wrists. Herrera-Gutierrez stated that plastic was wrapped around his face and that he could breathe but was unable to see. He claimed that he heard the two or three gunshots that killed Morales and Noriega, that someone untied his wrists and took the plastic off his head, and that Stricklin and Newman left the scene without shooting him.

Despite testimony from various witnesses regarding the timeline of events, the evidence did not establish a precise time for the shootings. Morales' fiance discovered the bodies at 2:15 p.m. The police broadcast about the shootings went out at 2:34 p.m.

The State's theory was that Stricklin and Newman committed the crimes together, at approximately 12:30 p.m. Newman's cell phone records showed multiple contacts with Stricklin on December 2, 2012, right before and after the relevant period. The State adduced evidence showing that Newman and Stricklin called each other seven times between approximately 9:27 and 11:13 a.m. Newman received six calls from 11:42 a.m. to 12:36 p.m., at which time Newman's phone used a cell tower located in the immediate vicinity of the body shop.[7] After his 11:13 a.m. call with Newman, Stricklin did not make or receive a call until 12:34 p.m., when he received a call which went to voicemail. Stricklin did not send or receive any text messages during this period of inactivity. Stricklin made his next call at 2:15 p.m., which was to Newman.

Stricklin's motion for postconviction relief contained the following relevant allegations: Under his first claim, he alleged that he was in downtown Omaha with his "stepson" Hashim C. on the day of the shootings from approximately 9:30 a.m. until noon. Stricklin alleged that they ate at a restaurant, purchased gas, and each got a haircut at a barbershop. He alleged they later drove to his grandmother's house. He alleged that

---

[7] *Id.*

during his drive, he made a phone call to a friend at 12:34 p.m. The call registered at a cell tower approximately 5 miles from the crime scene. He stated he received text messages during the drive.

Stricklin stated that he and Hashim arrived at his grandmother's house around 12:40 p.m. and that around 20 to 25 people were present, including his brother Daryel Stricklin. He stated Antoineya Richard (Antoineya), his girlfriend at the time and Hashim's mother, arrived at his grandmother's home and picked up Hashim around 2 or 3 p.m. Stricklin stated he made his trial counsel aware his alibi was supported by the barber, Hashim, Antoineya, and Daryel.

Under the second claim of his postconviction motion, Stricklin alleged his counsel was ineffective for failing to investigate as possible suspects Marcus Jefferson, Stricklin's half brother, and a man named "James Moore." Stricklin alleged Jefferson stated to him that Moore committed the murders due to a dispute involving money and "bad drugs."

Prior to the evidentiary hearing on the two claims ordered by this court, Stricklin filed a successive postconviction motion which alleged the State advanced a false prosecution theory by claiming to the jury that the cell phone location data represented the location of Stricklin or his phone rather than the location of a cell tower. The State moved to dismiss the successive motion for postconviction relief as time barred.

Stricklin also filed a motion to depose nine witnesses prior to the pending evidentiary hearing. The State objected to Stricklin's request to depose two of the witnesses, an agent with the Federal Bureau of Investigation and a representative from a cell phone provider, arguing the request went beyond Stricklin's first postconviction motion and the scope of our remand. The district court granted Stricklin's motion as to seven of the witnesses and took the State's objection regarding the remaining two witnesses under advisement. The court gave Stricklin leave to file a brief explaining how the two cell phone expert witnesses were relevant to the issues on remand.

Thereafter, the court held a hearing on Stricklin's motion and issued an order denying the request. The court agreed with the State that Stricklin's proposed use of the testimony went beyond his alibi claim. The court found "Stricklin's cell phone records are in evidence and he can present and rely upon them at his evidentiary hearing without depositions of these witnesses." In the same order, the court dismissed Stricklin's successive postconviction motion which is not at issue in this appeal.

At the evidentiary hearing, the district court received depositions from Stricklin, Daryel, Antoineya, Hashim, and Stricklin's trial counsel.

In his deposition, Stricklin testified that on December 2, 2012, he went with Hashim to the barbershop for their 9 a.m. appointment. The barber was running late, so Stricklin and Hashim went to a restaurant and a gas station and returned for their haircuts around 10 a.m. Stricklin stated that he and Hashim got their hair cut by the same barber every week and that their haircuts would take approximately 2 hours. Stricklin testified that he left the barbershop between noon and 12:30 p.m. and that he placed a call to a friend and briefly stopped at the friend's house while on the way to his grandmother's house.

Stricklin further testified that he made counsel aware of his alibi defense early in the process and that the alibi defense was the "number one" trial strategy. He stated that counsel did not inform him he would not present the alibi at trial and that Daryel, Antoineya, and Hashim were present and ready to testify. When asked about his discussions with counsel regarding trial strategy, Stricklin testified, "We had, like, a lockdown defense, and he didn't do any of it. He didn't — he didn't cross-examine the witnesses or anything. He just sat there, like, he didn't know what was going on."

Antoineya testified that she was in a dating relationship with Stricklin from 2010 to 2014 and that he lived in her home. She thought that Stricklin and Hashim went to the barbershop

at 11 a.m. and that Hashim returned home around 2 p.m. She spoke with Stricklin's counsel before trial on multiple occasions, and counsel knew she and Hashim were alibi witnesses, but she was never contacted to testify.

Daryel testified he was present at the family gathering at his grandmother's house. He recalled that he started eating around noon and that around 10 people were present. Daryel testified Stricklin arrived at his grandmother's between 12:30 and 1 p.m. Daryel recalled the time of Stricklin's arrival because he had to leave to go to a movie around the same time. He did not remember if anyone was with Stricklin when he arrived. He spoke with Stricklin's counsel before trial and provided this information.

Hashim was 10 years old in December 2012 and 17 years old at the time of his deposition. Hashim testified Stricklin is basically his stepfather and they had a good relationship. Hashim testified he and Stricklin went for a haircut together every week. He thought it would take about an hour for both him and Stricklin to get a haircut. He stated that he did not do anything else with Stricklin on the day in question other than get food and return home. His mother mentioned to him he might be a witness at Stricklin's trial, but he never spoke with Stricklin's counsel.

Stricklin's trial counsel testified via deposition. Counsel stated that he had not reviewed the case file for years. Counsel acknowledged that at one point he had planned to put forward an alibi defense but that during the pretrial process, his view of the alibi defense changed. He testified he had "vague memories of potentially not going forward with an alibi as trial strategy." Counsel testified he believed the alibi contained a "pitfall," and he recalled sharing his concerns with Stricklin.

Counsel conceded he had not filed a notice of alibi defense in order to present the defense at trial,[8] claiming there was "a conscious decision that we were moving forward without

---

[8] See Neb. Rev. Stat. § 29-1927 (Reissue 2016).

an alibi." Counsel stated that he discussed the alibi with Daryel and Antoineya and that he decided to not interview Hashim, because he was unclear as to Stricklin's relationship with Hashim. Counsel did not interview the barber, stating he was concerned the barber feared Newman and, if forced to testify, might have testified in a way that would harm Stricklin's defense. Counsel thought he made a few attempts to speak to the barber, but stated that the barber retained an attorney and that he did not remember if he spoke with the barber's attorney. Counsel stated his decision not to pursue the alibi was strategic, because all the alibi witnesses were personally close with Stricklin and had a motive to support him. Further, counsel stated he was aware of Stricklin's claim of other potential suspects, because Stricklin had discussed it with him, but that he chose not to pursue them as a defense.

In its order discussing and weighing the evidence, the court found counsel's "concerns about the viability of Stricklin's alibi appear to be reasonable in light of the evidence presented at trial and the evidence in the current record." The court found that Stricklin did not establish a clear timeline for his alibi and that when all of the timeline evidence was considered, there were gaps in the evidence which failed to refute the State's theory that Stricklin and Newman committed the murders at approximately 12:30 p.m. The court found the gaps showed that counsel's "concerns about a 'pitfall' in the alibi were reasonable."

Additionally, the court found Stricklin failed to prove any prejudice, because even if counsel had presented the alibi defense, the defense was so weak that the result of the trial would not have been any different. The court discussed and weighed the deposition testimony and concluded the evidence showed Stricklin had no alibi between approximately 11 a.m. and 12:34 p.m. The court found Stricklin's phone records placed him in the downtown Omaha area between 9:19 and 10:45 a.m. The court credited Stricklin's testimony that he

and Hashim arrived at the barber for their haircuts at around 10 a.m. Noting that Stricklin and Hashim had short hair and weekly haircuts, the court credited Hashim's testimony that their haircuts would have been finished within approximately 1 hour. The court found that Stricklin's alibi defense left a gap that "corresponds to the time of the murders." The court found that "[c]ompounding the damage [of the gap] to Stricklin's alibi defense, his cell phone's communications immediately before this gap are with a cell phone number attributed to Newman at trial." The court found "the evidence that Stricklin has supplied does not establish that [he] was at a place other than the crime scene for 'such a length of time that it was impossible for him to have been at the place where and when the crime was committed.'"[9]

Although the court had denied Stricklin leave to depose two cell phone record experts, the court considered Stricklin's offer of proof regarding the expert testimony. The court found even if the court had allowed the depositions and received the evidence, the analysis would not change, because Stricklin's cell phone records did not fill the gaps in his alibi and therefore did not support his alibi defense.

Lastly, the district court rejected Stricklin's claim that his trial counsel was ineffective in failing to investigate and present evidence of alternative suspects. The court found Stricklin had presented no exculpatory evidence on this issue and no evidence other than hearsay implicating Jefferson and Moore.

## ASSIGNMENTS OF ERROR

Stricklin assigns the district court erred in denying his ineffective assistance of counsel claim, when counsel failed to present an alibi defense and failed to investigate and present evidence of other possible suspects. Further, Stricklin assigns the court erred in denying his request to depose cell phone record experts.

---

[9] See *State v. Moreno*, 228 Neb. 210, 422 N.W.2d 56 (1988).

## STANDARD OF REVIEW

[1] In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. An appellate court upholds the trial court's findings unless they are clearly erroneous.[10]

[2] Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact.[11] When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error.[12] With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*,[13] an appellate court reviews such legal determinations independently of the lower court's decision.[14]

## ANALYSIS

[3-5] Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable.[15] The Nebraska Postconviction Act is intended to provide relief in those cases where a miscarriage of justice may have occurred; it is not intended to be a procedure to secure a routine review for any defendant dissatisfied with his or her sentence.[16] A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement

---

[10] *State v. Beehn*, 303 Neb. 172, 927 N.W.2d 793 (2019).

[11] See *id*.

[12] *Id*.

[13] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[14] *Beehn, supra* note 10.

[15] *Id*.

[16] *Id*.

of the defendant's rights under the Nebraska or federal Constitution.[17]

[6-8] Stricklin had the same counsel at trial and on direct appeal. To prevail on a claim of ineffective assistance of counsel under *Strickland*,[18] the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.[19] To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area.[20] To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different.[21] A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.[22] "The likelihood of a different result must be substantial, not just conceivable."[23]

[9] "'[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.'"[24]

---

[17] *Stricklin, supra* note 3.

[18] *Strickland, supra* note 13.

[19] *Stricklin, supra* note 3.

[20] *Id*.

[21] *Id*.

[22] *Id*.

[23] *Harrington v. Richter*, 562 U.S. 86, 112, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

[24] *State v. Hawthorne*, 230 Neb. 343, 347, 431 N.W.2d 630, 633 (1988), quoting *Strickland, supra* note 13. Accord, *State v. Moss*, 240 Neb. 21, 480 N.W.2d 198 (1992); *State v. Bostwick*, 233 Neb. 57, 443 N.W.2d 885 (1989).

Deficient performance and prejudice can be addressed in either order. If it is more appropriate to dispose of an ineffectiveness claim due to the lack of sufficient prejudice, that course should be followed.[25]

## Alibi Defense

Stricklin argues counsel was ineffective in failing to present his alibi defense. Stricklin claims he had frequent discussions with counsel regarding plans to present an alibi at trial, that counsel did not inform him he would not present the alibi, and that counsel's actions had foreclosed the possibility of an alibi due to the failure to file a notice of alibi. Stricklin contends that the importance of the alibi defense was clear from the beginning to the end, and there is no evidence counsel abandoned the alibi based on trial strategy, other than counsel's vague recollections. Stricklin argues counsel admitted he did not interview Hashim or the barber and did not hire anyone to investigate the alibi.

For the analytical purposes of resolving Stricklin's appeal, the court will assume Stricklin has established counsel's failure to present his alibi defense constituted deficient performance. However, in light of the court's ultimate holding on Stricklin's ineffective assistance of counsel claim, the court need not decide the question of deficient performance. Ultimately, we conclude Stricklin has failed to prove he was prejudiced by counsel's performance.

As a rule, a "violation of the Sixth Amendment right to *effective* representation is not 'complete' until the defendant is prejudiced."[26] Prejudice means "a reasonable probability that, but for counsel's unprofessional errors, the result of the

---

[25] *State v. Morgan*, 286 Neb. 556, 837 N.W.2d 543 (2013); *State v. Nesbitt*, 264 Neb. 612, 650 N.W.2d 766 (2002); *State v. Soukharith*, 260 Neb. 478, 618 N.W.2d 409 (2000).

[26] *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006).

proceeding would have been different."[27] "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[28] Assuming Stricklin has established deficient performance, Stricklin must also show there is a reasonable probability that but for counsel's failure to present his alibi defense, the result of his trial would have been different. Therefore, we turn to consider the merits of Stricklin's alibi defense, had it been presented to the jury.

[10] As noted by the trial court, Nebraska precedent indicates that a defendant asserting an alibi defense bears a heavy evidentiary burden. To establish an alibi defense, a defendant must show (1) he or she was at a place other than where the crime was committed and (2) he or she was at such other place for such a length of time that it was impossible to have been at the place where and when the crime was committed.[29]

Stricklin claims he could not have been present during the shootings, according to the State's theory that the shootings occurred around 12:30 p.m., because he proved through witness testimony and cell phone record evidence that he was located at least 5 miles away from the scene of the crime at 12:34 p.m. However, as we discuss, the evidence does not support Stricklin's alibi, especially at the critical time.

[11,12] The district court explained there was nothing accounting for Stricklin's presence between approximately 11 a.m. and 12:30 p.m. Stricklin complains the district court accepted his testimony that the haircuts commenced at

---

[27] *Strickland, supra* note 13, 466 U.S. at 694.

[28] *Id.*, 466 U.S. at 686.

[29] NJI2d Crim. 8.1, comment, citing *Moreno, supra* note 9; *State v. El-Tabech*, 225 Neb. 395, 405 N.W.2d 585 (1987); *State v. Sutton*, 220 Neb. 128, 368 N.W.2d 492 (1985); *Mays v. State*, 72 Neb. 723, 101 N.W. 979 (1904); *Peyton v. State*, 54 Neb. 188, 74 N.W. 597 (1898). See, *State v. Jacobs*, 226 Neb. 184, 410 N.W.2d 468 (1987); *State v. Veatch*, 16 Neb. App. 50, 740 N.W.2d 817 (2007).

10 a.m., but not his testimony that the haircuts were not finished until around noon. However, in an evidentiary hearing for postconviction relief, the postconviction trial judge, as the trier of fact, resolves conflicts in evidence and questions of fact, including witness credibility and the weight to be given a witness' testimony.[30] Where competent evidence supports the district court's findings, the appellate court will not substitute its factual findings for those of the district court.[31]

The trial court further explained that the phone records undermined the credibility of Stricklin's alibi and showed that Stricklin and Newman were in contact with one another based on their numerous phone communications on the date of the shootings. At trial, the State called a records custodian with a cell phone provider who testified that Stricklin's phone records showed there was a call between Stricklin and Newman at 11:13 a.m., and then no phone activity on Stricklin's phone until 12:34 p.m. The court found this to be evidence of "a gap that corresponds to the time of the murders." Further, the phone records disprove Stricklin's testimony that he placed a call at 12:34 p.m. and received text messages during his drive to his grandmother's, because the phone records show that Stricklin received a call at 12:34 p.m., which went to voicemail, and that he did not receive text messages during this time. Even recognizing the fact that Stricklin's phone was located approximately 5 miles away from the crime scene at 12:34 p.m., such evidence does not establish that Stricklin was unable to be present at the body shop with Newman when the shootings occurred.[32]

The record does not support Stricklin's claim that he was at another place for such a length of time that it was impossible for him to have committed the murders. We agree with the district court that in light of the incriminating phone records

---

[30] *State v. Russell*, 308 Neb. 499, 954 N.W.2d 920 (2021).

[31] *Id*.

[32] See, e.g., *State v. Jackson*, 275 Neb. 434, 747 N.W.2d 418 (2008).

and an eyewitness identification, Stricklin failed to show a reasonable probability that presentation of his alibi defense at trial would have changed the outcome. Stricklin has failed to establish he was prejudiced by counsel's decisions. As such, Stricklin's claim that his counsel was ineffective for failing to present an alibi defense is without merit.

## Other Suspects

[13] Stricklin contends counsel was ineffective in failing to investigate and present evidence of other suspects. However, Stricklin's asserted theory regarding other suspects is not based on any evidence in our record, other than speculation based on hearsay. Stricklin attempted to refer to police reports contained in the presentence investigation report. However, the district court did not receive those materials into evidence and did not consider them. Thus, there is no evidence to support a reasonable probability of a different outcome had counsel presented evidence of other suspects. Trial counsel's failure to investigate various aspects of the case is not ineffective assistance of counsel, absent prejudice and a specific showing what the investigation would have revealed, what exculpatory evidence would have been discovered, or how such an investigation would have changed the outcome of the trial.[33] This assignment of error is without merit.

## Deposition of Cell Phone Experts

Stricklin argues the court erred in not granting him leave to depose two cell phone experts. Stricklin contends that the experts would have interpreted the cell phone records in a manner corroborating his alibi. The State argues the court correctly found Stricklin's request to be outside this court's mandate upon remand.

As noted, following remand for an evidentiary hearing on two of Stricklin's postconviction claims, Stricklin moved

---

[33] See *State v. Marks*, 286 Neb. 166, 835 N.W.2d 656 (2013).

to depose nine additional witnesses. The State objected to Stricklin's request to depose two cell phone record expert witnesses, and the court sustained the objection. In doing so, the court found that challenging the use of Newman's cell phone records was beyond the scope of the alibi claim raised in Stricklin's first motion for postconviction relief. Additionally, the court noted that Stricklin's cell phone records were received into evidence at trial and could be relied upon to support his claims on remand without the additional depositions of expert witnesses.

The construction of a mandate issued by an appellate court presents a question of law, on which an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.[34] A district court has an unqualified duty to follow the mandate issued by an appellate court and must enter judgment in conformity with the opinion and judgment of the appellate court.[35]

Stricklin has not argued the district court erred in interpreting this court's mandate, and we find no error by the district court in that regard. Nor has Stricklin explained how his request was within the scope of the mandate.

To the extent any of the proposed expert testimony would have been relevant to Stricklin's alibi defense and thus within the scope of our mandate, we review the court's denial of a discovery request for an abuse of discretion.[36] Here, the court considered Stricklin's offer of proof regarding the expert testimony for purposes of evaluating his alibi defense and concluded that even if it had allowed the depositions and received the evidence, the result would have been the same. The court found Stricklin's phone records undermined, rather than supported, his alibi defense, because the phone records established a gap that corresponded with the time of the murders and showed

---

[34] *State v. Harris*, 307 Neb. 237, 948 N.W.2d 736 (2020).

[35] *State v. Payne*, 298 Neb. 373, 904 N.W.2d 275 (2017).

[36] See *Jackson, supra* note 32.

Stricklin's contacts with Newman right before and after the murders. We find no abuse of discretion by the district court. This assignment of error is without merit.

## CONCLUSION

The order of the district court dismissing Stricklin's motion for postconviction relief is affirmed.

Affirmed.

Heavican, C.J., and Freudenberg, J., not participating.