IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MCSWINE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

FREDERICK E. MCSWINE, APPELLANT.

Filed May 30, 2023.    No. A-22-611.

Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed.

Jason E. Troia, of Dornan, Troia, Howard, Breitkreutz, Conway & Dahlquist, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Austin N. Relph for appellee.

RIEDMANN, BISHOP, and WELCH, Judges.

BISHOP, Judge.

## INTRODUCTION

A jury found Frederick E. McSwine guilty of terroristic threats, kidnapping, first degree sexual assault, and use of a deadly weapon to commit a felony, stemming from an incident that took place in October 2012. His convictions were affirmed on appeal. McSwine then filed for postconviction relief, alleging numerous claims. The Lancaster County District Court denied, without an evidentiary hearing, all but one of McSwine's postconviction claims; this court affirmed that order on appeal. The remaining postconviction claim proceeded to an evidentiary hearing where McSwine alleged that his trial counsel was ineffective for failing to introduce corroborating evidence to support his defense that the potentially inculpatory text messages he sent immediately following the incident leading to his convictions had been prompted by an earlier separate incident in which he was involved. The district court denied McSwine's remaining postconviction claim and he appeals from that order. We affirm.

- 1 -

## BACKGROUND

### TRIAL AND CONVICTIONS

The details underlying McSwine's convictions can be found in *State v. McSwine*, 22 Neb. App. 791, 860 N.W.2d 776 (2015) (*McSwine I*) (reversing for new trial due to prosecutorial misconduct in statements made during closing argument), and *State v. McSwine*, 292 Neb. 565, 873 N.W.2d 405 (2016) (*McSwine II*) (reversing *McSwine I*, finding no prosecutorial misconduct).

Briefly summarized, on October 13, 2012, McSwine knocked on C.S.' apartment door and asked if he could use the bathroom; he had done the same thing a few weeks prior. McSwine and C.S. knew each other because McSwine worked at a gas station that C.S. frequented. On October 13, C.S. allowed McSwine into the apartment; her boyfriend was asleep in her bedroom. McSwine threatened C.S. with a sharp instrument and forced her from the apartment into his car. He drove to isolated areas where he forced C.S. to engage in various sexual acts. After approximately 5 hours, he permitted C.S. to flee his car, and she ran to a nearby home where residents called law enforcement. McSwine testified that C.S. accompanied him willingly and consented to the various sexual acts with him. He claimed C.S. became upset with him for lying to her about having a cell phone charger in the car and accused him of using her for sex. According to McSwine, when C.S. asked to get out of his car, he stopped the car so she could leave. He claimed C.S. concocted a story about being kidnapped and sexually assaulted because she was angry with him and did not want to get in trouble with her boyfriend or her parents. See *McSwine I, supra*.

The jury returned guilty verdicts and McSwine was sentenced to a total of 57 to 85 years' imprisonment. See *McSwine II, supra*. McSwine's convictions were affirmed. See *State v. McSwine*, 24 Neb. App. 453, 890 N.W.2d 518 (2017) (petition for further review denied March 23, 2017) (*McSwine III*). McSwine then filed a motion for postconviction relief asserting numerous claims, all of which, except for one claim, were denied by the district court without an evidentiary hearing. This court affirmed that order. See *State v. McSwine*, No. A-18-1082, 2020 WL 4590276, (Neb. App. Aug. 11, 2020) (selected for posting to court website). See, also, *State v. Koch*, 304 Neb. 133, 933 N.W.2d 585 (2019) (within postconviction proceeding, order granting evidentiary hearing on some issues and denying hearing on others is final, appealable order as to claims denied without hearing).

### REMAINING POSTCONVICTION CLAIM

McSwine's remaining postconviction claim, for which he received an evidentiary hearing on April 28, 2022, related to whether his trial counsel was ineffective for failing to introduce corroborating evidence to support his defense that text messages he sent on October 13, 2012, had been prompted by an incident occurring earlier that day in Eagle, Nebraska, and not in response to the incident involving C.S. Specifically, there were multiple text messages received into evidence that were sent from McSwine to his wife and his friend on October 13 after C.S. left his car and ran to a nearby residence. We described those messages in *McSwine I*:

> The first collection of text messages was sent from McSwine to his wife. In those messages, he tells her that he "messed up bad" and that "[c]ops are probably going to be looking for [him and] if they are [he's] going to run." McSwine apologizes to his wife and indicates that he "[doesn't] deserve [her and wished he] didn't f*** everything up." In a

later text message from McSwine to his wife, he asks her if she "would give [him] up even if [he] was dead wrong and did some foul s***." McSwine then discusses running away to Mexico or to a "reservation."

The second collection of text messages was sent from McSwine to a friend. In these messages, McSwine indicates that he got himself into trouble, that he "might be taking a trip," and that he doesn't know "what [he] was thinking." McSwine then states that he "f*** this all up."

22 Neb. App. at 795-96, 860 N.W.2d at 781.

During trial, the State suggested the text messages indicated McSwine's feelings of guilt and remorse about kidnapping and sexually assaulting C.S. But McSwine testified that the messages had nothing to do with C.S.; rather, he claimed the messages were an indication of his concern about an unrelated trespassing incident at a residence in Eagle earlier on October 13, 2012. McSwine testified that in the early morning hours on that day, he had been selling marijuana to a friend in Eagle, but he got nervous that the buyer was going to rob him, so he hit the buyer and ran into and through a nearby house. He claimed an elderly woman confronted him, he apologized, and then he ran out. He also testified that he had just finished smoking methamphetamine, and assumed that because he was on parole, he would be facing significant charges for this encounter. See *McSwine II, supra*.

During closing arguments, the prosecutor specifically disputed McSwine's testimony about the motivation for the text messages, and on two separate occasions told the jury that there was no evidence to support McSwine's testimony that he had trespassed through a residence. McSwine's counsel did not object to the prosecutor's comments. Following closing arguments, the jurors asked the court whether the prosecutor said there was no evidence, including a police report, of McSwine's presence in the house; the district court informed the jury that it had all the evidence it was going to receive in the case. Neither the State nor McSwine objected to the court's handling of the question. See *McSwine II, supra*. (We note here that these statements by the prosecutor were the basis for this court reversing and remanding for a new trial; however, as noted previously, on petition for further review, the Nebraska Supreme Court concluded the statements did not amount to prosecutorial misconduct and reversed and remanded to this court for consideration of the remaining assigned errors. See *McSwine II, supra*.)

After McSwine was found guilty, he filed a motion for new trial, and in support, offered into evidence police reports related to the Eagle incident. The police reports had been provided to the defense by the State but were not offered at trial. According to the reports, a homeowner identified McSwine as the trespasser based upon a picture obtained from a security camera of a convenience store located in Eagle, but months later, the homeowner was not able to identify McSwine from a photographic lineup. See *McSwine II, supra*.

At the April 28, 2022, evidentiary hearing on McSwine's remaining postconviction claim, the district court took judicial notice of various documents, including the entire bill of exceptions. The parties also stipulated to the admission of numerous exhibits, including the deposition of McSwine's trial counsel and the police reports from the Eagle trespassing incident.

The prosecutor from McSwine's trial testified at the evidentiary hearing. He stated that had the two trespass victims testified at trial about McSwine running through their home, he would not

have stated in closing arguments that there was no evidence to corroborate McSwine's testimony that the text messages were about the trespass.

McSwine's trial counsel acknowledged in his deposition that McSwine had told him that the text messages had to do with an incident in Eagle and did not relate to the incident involving C.S. Trial counsel also acknowledged that he made "[n]o attempt" to talk to the victims of the events that transpired in Eagle, and that the text messages offered by the State were harmful to McSwine's case because of "consciousness of guilt." However, trial counsel was concerned that "whatever offense [McSwine] may have committed in Eagle that morning might have looked a little more serious than a simple trespass." Trial counsel had his notes from his conversation with McSwine after closing arguments, and they contained the word "'burglar,'" and counsel was concerned that "if we presented evidence about what happened that morning, that [McSwine] would look like . . . he had committed a burglary that morning in Eagle." However, in later reviewing the police reports, trial counsel admitted that it was a mistake not to support McSwine's defense with evidence of the trespass in Eagle, and that "it would have affected [McSwine's] credibility with the jury . . . [i]f [he] had called one or more of the folks from that Eagle house to testify about what happened, then, well, we would have had a better argument about the context of the text messages." Trial counsel stated that his "performance was deficient with respect to that issue." Counsel agreed that given the jury's question to the court, "Did [the prosecutor] say that there was no evidence (including a police report) of Mr. McSwine's presence in a local house in Eagle, NE," that it was "fair" to say that the jury was assessing McSwine's explanation for the text messages. Trial counsel agreed that it was possible his performance on this one issue prejudiced McSwine's trial, that it was "fair" to say there was a reasonable probability that there may have been a different outcome if this evidence had been presented, and in trial counsel's opinion, it was "not a reasonable trial strategy."

A police report indicated that the residents of the Eagle home reported that "a black male had entered their home for a short period of time and then fled." In a follow-up interview approximately 8 months after the incident, the female resident described hearing the back door open and then observing "a black male quickly walk past her in the living room," and that he said, "'there's been an emergency and I need to leave.'" The man then "wrapped his hand in his t-shirt and used this hand to open the entry way door . . . as to not leave fingerprints." The incident frightened the female resident and "she called 911." When presented a photo lineup in this followup interview, however, she was unable to identify McSwine. The male resident saw "someone in a white t-shirt," but he "never got a good look at the subject." The residents were told by a law enforcement officer that it would be "more of a hassle" and "wouldn't be worth their time" to press charges and have to go to court.

DISTRICT COURT'S ORDER DENYING POSTCONVICTION RELIEF

On July 18, 2022, the district court entered an order denying McSwine's motion for postconviction relief. The court pointed out that trial counsel was a "highly skilled attorney with extensive experience in criminal defense," and had "experience prosecuting and defending sexual assault cases throughout his career," and of his "approximately 41 jury trials, 31 . . . involved felony charges." Trial counsel had discussed presenting evidence of the Eagle incident with McSwine, but "had serious concerns that if the victims were called to testify about the Eagle

incident, whatever offense [McSwine] may have committed in Eagle might have appeared to be a burglary or robbery – not just a simple trespass." Trial counsel also knew that the individual involved in the alleged failed drug transaction was not likely to testify, and other than a photo of McSwine taken at a convenience store in Eagle that morning, there was no other evidence of a failed drug transaction. Trial counsel informed McSwine that the only way to present evidence of what occurred in Eagle was for McSwine to testify, and trial counsel believed McSwine was "on board with this strategy."

The district court concluded that trial counsel's performance was not deficient because his decision not to call the victims of the Eagle trespass was a reasonable trial strategy. The court noted that trial counsel stated during his deposition that he did not introduce evidence regarding the trespass because he was concerned the jury would believe it was a burglary, and "assuming the Eagle victims were able to identify [McSwine]," their testimony "was potentially damaging to [McSwine]." The court did not reference trial counsel's testimony that it was a mistake not to support McSwine's testimony with evidence of the trespass in Eagle, nor his acknowledgement that in his opinion, it was not a reasonable trial strategy to fail to do so.

The district court further considered whether McSwine demonstrated a reasonable probability that but for trial counsel's alleged deficient performance, the result of the proceeding would have been different. The court concluded that McSwine had not met his burden of proving prejudice because he failed to "offer evidence specifically showing what the [trespass victims'] testimony would have been and that there was a substantial likelihood that such testimony would have changed the outcome of trial." The court further found that any such evidence would not have been exculpatory, because even if such testimony "would have corroborated [McSwine's] testimony that he had committed a trespass in Eagle on the morning of the sexual assault, there is no reasonable probability that the outcome of the trial would have been different when viewed with the overwhelming direct evidence presented at trial."

The district court pointed out that the Eagle incident took place on October 13, 2012, at approximately 9:30 a.m. and C.S. was abducted "from her apartment in nearby Waverly at knifepoint between 10:00 and 10:30 that morning." McSwine kept C.S. for 5 hours before allowing her out of his car "just before 4 p.m.," at which time C.S. ran to a nearby house and law enforcement was called. McSwine began sending the above-noted text messages at 4:20 p.m., soon after C.S. was released. The court described other evidence presented at trial and concluded that "any testimony from the Eagle victims would have had an isolated or minimal effect on the jury's findings," and therefore McSwine failed to show prejudice.

McSwine appeals from the district court's July 18, 2022, order.

ASSIGNMENTS OF ERROR

McSwine claims the district court erred in finding that "defense counsel was not deficient," that McSwine "failed to establish prejudice," and in denying his motion for postconviction relief.

STANDARD OF REVIEW

In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. An appellate court upholds the trial

court's findings unless they are clearly erroneous. *State v. Beehn*, 303 Neb. 172, 927 N.W.2d 793 (2019).

A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's conclusion. *State v. Beehn, supra*.

## ANALYSIS

In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington, supra*, to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Armendariz*, 289 Neb. 896, 857 N.W.2d 775 (2015). Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *Id*. The two prongs of the test for ineffective assistance of counsel may be addressed in either order, and the entire ineffective assistance analysis should be viewed with the strong presumption that counsel's actions were reasonable. See *id*.

### DEFICIENT PERFORMANCE

McSwine argues that his trial counsel's performance was deficient because counsel failed to introduce evidence corroborating McSwine's testimony that he committed a trespass in Eagle on the morning of the sexual assault. Specifically, he believes that trial counsel should have called the trespass victims to testify at trial because such evidence would have supported his explanation that the text messages at issue were prompted by the trespass and were not related to C.S. He contends the police report was "very straightforward" and there "was not a significant risk that the jury would have concluded this was a burglary or robbery." Brief for appellant at 16. McSwine argues that "[g]iven the prosecution's ability to argue the text messages in the manner they did, [trial counsel's] performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area" because "lawyers would secure the testimony of easily attainable witnesses that bolster the credibility of their client and explain away a key piece of the prosecution's evidence against their client." *Id*. at 18. "This is especially important in cases where the jury's decision is going to hinge on the credibility of the defendant or the alleged victim." *Id*. McSwine contends "it was without question essential that the jury hear from the [trespass victims] so the jury did not have to solely rely on the word of a convicted felon." *Id*. McSwine argues that the district court erred in finding trial counsel's decision was reasonable trial strategy.

As set forth previously, McSwine's trial counsel acknowledged in his deposition that McSwine had told him that the text messages had to do with an incident in Eagle and did not relate to the incident involving C.S. Trial counsel also acknowledged that the text messages offered by the State were harmful to McSwine's case because of "consciousness of guilt." However, trial counsel was concerned that what transpired in Eagle that morning might have looked more serious than a simple trespass and counsel was concerned that "if we presented evidence about what happened that morning, that [McSwine] would look like . . . he had committed a burglary that

morning in Eagle." However, after closing arguments, when "rereading" the police reports, which trial counsel acknowledged were "not complicated," trial counsel admitted that it was a mistake not to support McSwine's defense with evidence of the trespass in Eagle. Doing so may have helped McSwine's credibility with the jury if he had called a witness from the Eagle residence, as they "would have had a better argument about the context of the text messages." Trial counsel stated that his "performance was deficient with respect to that issue."

Trial counsel agreed that given the jury's question to the court, "Did [the prosecutor] say that there was no evidence (including a police report) of Mr. McSwine's presence in a local house in Eagle, NE," that it was "fair" to say that the jury was assessing McSwine's explanation for the text messages. Trial counsel agreed that it was possible his performance on this one issue prejudiced McSwine's trial, that it was "fair" to say there was a reasonable probability that there may have been a different outcome if this evidence had been presented, and in trial counsel's opinion, it was "not a reasonable trial strategy."

Despite trial counsel's acknowledgement that his performance on this one issue was deficient and was "not a reasonable trial strategy," the district court nevertheless concluded that trial counsel's failure to call the trespass victims to testify regarding the Eagle incident was a reasonable trial strategy. The court referred to trial counsel's "serious concerns" that the Eagle victims' testimony may have made the incident appear to be a burglary or robbery rather than a "simple trespass" and the individual in the failed drug transaction was not likely to testify. The court did not reference trial counsel's statements regarding deficiency and trial strategy in reaching its decision. Accordingly, we can only surmise that the court focused on trial counsel's trial strategy in preparation of and during trial rather than in hindsight after closing arguments. See *State v. Hochstein*, 216 Neb. 515, 518, 344 N.W.2d 469, 472 (1984) (record must affirmatively support claim of ineffective assistance of counsel, which is "not to be judged by hindsight"). "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674 (1984). Trial counsel is afforded due deference to formulate trial strategy and tactics, and we are not to second-guess trial counsel's reasonable strategic decisions when reviewing claims of ineffective assistance of counsel. See *State v. Edwards*, 284 Neb. 382, 821 N.W.2d 680 (2012).

However, McSwine argues that trial counsel's concerns were not reasonable strategic decisions because they were based on trial counsel's misunderstanding of or failure to review "the contents of the Cass County police reports at the time he was preparing for trial." Brief for appellant at 16. He claims that had trial counsel adequately reviewed the police report, it would have been evident that there "was not a substantial risk of the Eagle victims portraying McSwine as a burglar or robber." *Id.* at 15. He notes that the police report merely indicated that McSwine "walked quickly through the house from one door to another" and there were "no allegation[s] of force." *Id.* at 16-17. Therefore, he argues, "there was not a significant risk that the jury would have concluded this was a burglary or robbery" and "[e]ven if there was some minimal risk, the risk was worth taking." *Id.*

Given that trial counsel conceded during his deposition that it was not a reasonable trial strategy not to offer evidence of the Eagle incident, we assume without deciding that trial counsel was deficient for failing to offer some corroborating evidence of the Eagle incident. That said, we otherwise agree with the district court that McSwine failed to establish prejudice.

PREJUDICE NOT ESTABLISHED

To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *State v. Stricklin*, 310 Neb. 478, 967 N.W.2d 130 (2021). A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id*. The likelihood of a different result must be substantial, not just conceivable. *Id*. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Id*.

As set forth previously, the district court concluded that McSwine had not met his burden of proving prejudice because he failed to offer evidence showing what the trespass victims' testimony would have been, and that even if that testimony "would have corroborated [McSwine's] testimony that he had committed a trespass in Eagle on the morning of the sexual assault, there is no reasonable probability that the outcome of the trial would have been different when viewed with the overwhelming direct evidence presented at trial."

In addition to the district court's references to the evidence as we set forth previously, we also consider the following. In *McSwine II, supra*, the Nebraska Supreme Court determined that the prosecutor's references in closing arguments regarding McSwine's explanation for the text messages being unsupported by any evidence were not prejudicial. In reaching that conclusion, the Supreme Court set forth the colloquy between the prosecutor and McSwine on cross-examination. The prosecutor did not challenge McSwine on whether the Eagle event actually occurred, but instead simply fleshed out more details, including that: McSwine was in the Eagle house for 20-30 seconds, he was not there for the purpose of stealing anything but to "lose [the] guy" he thought was following him, McSwine "told the lady [he was] just passing through" but she "looked scared" and he "felt bad," and McSwine then got into his car and went to C.S.' house. *McSwine II*, 292 Neb. at 579-80, 873 N.W.2d at 416. The Supreme Court stated:

> When considered collectively and not in isolation, the crux of the State's argument was not that the trespassing event did not take place; rather, the crux of the argument was that McSwine's explanation that this event caused him to send those text messages did not make sense.

*McSwine II*, 292 Neb. at 580-81, 873 N.W.2d at 416.

The Nebraska Supreme Court also considered the strength of the evidence supporting McSwine's convictions, and found that "in this case, such evidence is strong." *Id*. at 581, 873 N.W.2d at 417. It referred to the following evidence: C.S.' testimony that McSwine abducted and sexually assaulted her at knifepoint; that C.S. knew McSwine because she frequented a local convenience store where he worked and he had previously used the bathroom in her apartment;

that a friend of McSwine's testified that McSwine told him he had abducted and sexually assaulted C.S. at knifepoint; and the physical evidence, "notably the laceration to C.S.' vagina, also supported that a sexual assault occurred." *Id*. at 582, 873 N.W.2d at 417. Further, the circumstances did not support that the sexual contact was consensual given that C.S. "was wearing little by way of clothing and left her apartment without shoes, a cell phone, money, or her identification," and the "sexual contact occurred in isolated and remote areas of Lancaster County, requiring C.S. to walk barefoot through coarse vegetation and over rocky earth." *Id*.

The State contends that "even with the trespassing victims' testimony (assuming it was consistent with the police reports), it would have made no difference." Brief for appellee at 15. "While it would have corroborated McSwine's testimony that he had engaged in a trespass earlier that day, it would have done nothing to support his assertion that the inculpatory text messages adduced by the State referenced that trespass as opposed to the sexual assaults." *Id*. at 15-16. The State argues that the substance of the text messages refer "to something much more severe than a trespass, a marijuana transaction, having methamphetamine in his system, or punching someone." *Id*. at 16. "[T]he substance of the text messages indicated that they were referring to something quite severe; it makes sense that they would have been sent close in time to what they were referring to," and the "texts here were sent shortly after C.S. got away from McSwine, which was hours after the trespassing incident occurred." *Id*.

McSwine contends prejudice was established because the "trial outcome came down to a credibility determination and the jury factored in the absence of evidence supporting McSwine's explanation for the text messages." Brief for appellant at 19. He claims the text messages were "vague enough on detail for either the prosecution's theory or McSwine's theory to hold water." *Id*. at 20. He claims that the "jury question alone should be sufficient to undermine the confidence in the outcome." *Id*. at 21. "There is absolutely no reason for the jury to ask [its] question unless they were weighing the credibility of his consent defense and explanation of the text messages." *Id*. He claims that the failure to offer the "corroborative evidence from Eagle . . . allowed the prosecution to flip the script." *Id*. at 22. "Logically, the jury wondered whether McSwine's story checked out in the slightest way by the existence of a report." *Id*. McSwine argues that if the "direct evidence of guilt" was "so overwhelming," then "Eagle, Nebraska would not have been worthy of [a] jury question." *Id*. at 23. McSwine then directs us to various evidence demonstrating C.S.' lack of credibility with law enforcement when initially reporting the incident and then her inconsistent testimony at trial.

McSwine claims that the "prejudice prong of this analysis is apparent from the jurors' communication" and that "[t]his case came down to credibility." *Id.* at 28. The jury's question to the court was, "Did [the prosecutor] say that there was no evidence (including a police report) of Mr. McSwine's presence in a local house in Eagle, NE?" We conclude that such a question by itself does not indicate the jury's complete disregard of McSwine's testimony about what transpired in Eagle. It is possible the jury was simply confirming that there was no police report for its review during deliberations; the question does not compel a conclusion that the jury entirely disbelieved McSwine's testimony about the events in Eagle.

Further, as set forth previously, the prosecutor did not challenge McSwine's account of the trespass, but instead appeared to flesh out details demonstrating the insignificance of the 20-30 seconds McSwine was in the residence in terms of the unlikely correlation between that incident

and the later, more inculpatory text messages that followed immediately after McSwine allowed C.S. out of his vehicle. We note that the police reports also reflected that the trespass victims were told by law enforcement that it would be "more of a hassle" and "wouldn't be worth their time" to press charges and have to go to court. Having those witnesses testify to that effect would not have bolstered McSwine's testimony that his text messages to his wife and friend more than 5 hours later related to the Eagle incident rather than the C.S. incident. McSwine texted that he "messed up bad" and that he did not deserve his wife and wished he had not "f*** everything up," had done "some foul s***," and was running away to Mexico or a reservation. *McSwine I*, 22 Neb. App. at 795-96, 860 N.W.2d at 781. As observed by the State, the substance of these messages refers "to something much more severe than a trespass, a marijuana transaction, having methamphetamine in his system, or punching someone" and are more indicative of McSwine having done "something quite severe." Brief for appellee at 16.

We conclude that there was not a reasonable probability that but for trial counsel's alleged deficient performance, the result of the trial would have been different. McSwine did not show a probability sufficient to undermine confidence in the outcome, and the likelihood of a different result was not substantial, even if conceivable. See *State v. Stricklin*, 310 Neb. 478, 967 N.W.2d 130 (2021).

## CONCLUSION

We affirm the district court's July 18, 2022, order denying McSwine's request for postconviction relief after an evidentiary hearing.

AFFIRMED.