IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. HARLAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

SHADOW HARLAN, APPELLANT.

Filed December 30, 2025.    No. A-24-847.

Appeal from the District Court for Douglas County: HORACIO J. WHEELOCK, Judge. Affirmed.

Joshua W. Weir, of Black & Weir Law Offices, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, and Jordan Osborne for appellee.

PIRTLE, WELCH, and FREEMAN, Judges.

FREEMAN, Judge.

## INTRODUCTION

Shadow Harlan appeals the order of the Douglas County District Court denying his motion for postconviction relief following an evidentiary hearing in which Harlan claimed that he received ineffective assistance of counsel when trial counsel failed to file a direct appeal. For the reasons set forth below, we affirm.

## BACKGROUND

On August 31, 2020, Harlan entered a plea of no contest to one count of manslaughter, a Class III felony, and one count of possession of a deadly weapon during the commission of a felony, a Class II felony. The State had initially filed an information charging Harlan with first degree murder, a Class IA felony, but reduced the charge to manslaughter in exchange for Harlan's plea. Additional charges against Harlan were also dismissed as part of the plea agreement. On

- 1 -

February 1, 2021, the district court sentenced Harlan to 19 to 20 years' imprisonment on the manslaughter conviction and 21 to 40 years on the possession of a deadly weapon conviction, to be served consecutively. Harlan received credit for 735 days of time served. No direct appeal was filed.

In August 2021, Harlan filed a verified motion for postconviction relief, alleging ineffective assistance of counsel. Harlan argued that counsel failed to submit, file, or otherwise perfect his direct appeal after sentencing as he requested. Through his testimony, Harlan limited his postconviction claims to his primary attorney, Jessica Douglas, excluding co-counsel. The matter was set for an evidentiary hearing.

At the evidentiary hearing, depositions from Harlan, Douglas, and Harlan's mother Latosha Bolton were received into evidence. The court also considered a copy of the motion for attorney fees, a letter authored by Douglas to Harlan, a "Call Detail Standard" report for phone calls made by Harlan between January 31, 2021, to March 1, 2021, and a record of jail phone calls between Harlan and Bolton made from the day of sentencing, February 1, 2021, to the following day, February 2, 2021.

Douglas testified that she was court-appointed to represent Harlan and that she served as lead attorney throughout the duration of the case. Douglas confirmed that it was her standard practice to review a defendant's rights at the time of her initial appointment, before any critical stage such as a plea hearing, and once more at sentencing to confirm any remaining rights. She confirmed that, consistent with her practice, she advised Harlan of his rights to appeal at their initial meeting, again when considering the plea deal, and twice following sentencing. She also noted that her co-counsel had at least one joint discussion with Harlan evaluating potential appeals and plea strategy.

More specifically, Douglas sat down with Harlan following the denial of his motion to suppress and reviewed with him why the motion was denied, whether or not there were any valid appellate issues, and she told him, if they proceeded to trial, they would appeal everything. Thereafter, Douglas met with Harlan to discuss the State's plea deal. She again recalled discussing his right to appeal and explained how entering a plea would affect that right before sentencing. Douglas also provided her professional opinion regarding whether pursuing an appeal would be advisable.

Douglas proceeded to explain her billing practices, her post sentencing communications, and her documentation of those interactions. She further explained that she typically maintained a handwritten billing ledger in each client file and recorded her time contemporaneously.

Douglas also stated that typically after a sentence is imposed, she briefly speaks with the defendant at counsel's table to explain the sentence, and she advises her client they have a window of time to appeal. She testified that Harlan declined to appeal, explaining that Harlan himself referenced the benefit of the plea agreement, including the fact that other felony cases were dismissed as part of the agreement. Douglas distinctly recalled that both she and Harlan were pleased with the outcome and that Harlan even smiled and shook her hand.

In contrast, Harlan testified that Douglas advised him that going to trial would likely result in a poor outcome and recommended the plea agreement. Harlan recalled meeting with Douglas before sentencing to discuss the plea but claimed that Douglas did not discuss his right to appeal. Harlan confirmed that he did not mention an appeal to Douglas following sentencing, but he also

denied ever having a conversation about appeals with Douglas. Harlan simply recalled asking how much time he would serve before exiting the courtroom with officers.

Following sentencing, while still in the Douglas County jail, Harlan claimed to have been informed for the first time about appellate review from his cellmate. Harlan asserted that he attempted to contact Douglas by phone but was unable to reach her. He then claimed to have asked his mother to contact Douglas over the phone regarding an appeal following sentencing. Despite this request, Harlan maintained that he had no contact with Douglas following sentencing pertaining to an appeal.

However, Bolton was also present at the sentencing hearing and recounted a different version of events. Bolton alleged that she spoke with Douglas immediately following sentencing and was informed that Harlan was given a 17 year sentence. Later in her deposition, Bolton indicated that she had also mentioned an appeal to Douglas during this conversation. Bolton initially claimed she had no opportunity to speak with Harlan following sentencing, but she subsequently withdrew this recollection, claiming that they spoke briefly as he was exiting the courtroom. According to Bolton, Harlan asked her to contact his attorney to discuss an appeal.

Bolton confirmed having had phone conversations in which Harlan requested that she contact Douglas on his behalf to inquire about an appeal. Bolton asserted that she attempted to reach Douglas five to seven times but was unable to make contact, and eventually left a voicemail message expressing Harlan's desire to appeal.

By comparison, Douglas testified that on February 16, 2021, she spoke with Harlan by phone to discuss the merits of an appeal. Douglas advised Harlan that an appeal would likely be unsuccessful and could result in reinstatement of more serious charges. In forming this opinion, Douglas relied on the weight of the State's evidence. Aware of Harlan's mental composition, identified in a comprehensive mental evaluation, Douglas indicated that she made the call to ensure that Harlan fully understood his options, despite having already explained his right to appeal on two prior occasions. Douglas recalled Harlan saying that he was "fine" and indicated that after 2 years representing him, she understood that to mean he did not want to appeal. Douglas' billing records reflected this communication with an entry that reads, "February 16th of 2021, spoke to client. Doesn't want appeal." Harlan denied ever speaking with Douglas on February 16.

Douglas also reported speaking with Bolton on March 10, 2021, where Bolton expressed concerns about the length of the sentence. Douglas reiterated the details of her discussion with Harlan and compared Harlan's sentence with what he could have received. Douglas also prepared a client letter memorializing the conversation between Harlan and herself that affirmed the closure of Harlan's case and identified that there were no appeal issues or further hearings. This communication was also recorded on Douglas' time sheet. Despite this record, Bolton claimed to not have spoken with Douglas at all following their conversation at the sentencing hearing, but she later withdrew this statement, asserting that she connected with Douglas by phone in the week following.

In an order dated October 19, 2024, the district court denied Harlan's motion for postconviction relief. The district court relied on a two-part test derived from *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Strickland* held generally that in order to establish that a defendant was denied effective assistance of counsel, the defendant must demonstrate that counsel's performance was deficient, and that the defendant was prejudiced

thereby. The court relied primarily on the credibility of Douglas, finding her testimony to be consistent and supported by additional documentation.

The court gave substantial weight to Douglas' time records and her motion for attorney fees, which memorialized her February 16, 2021, conversation with Harlan. In contrast, the court found the testimony of Harlan and his mother not credible, noting that the recorded phone calls between Harlan and his mother contained no mention of an appeal. Based on this evidence, the court concluded Harlan could not demonstrate either deficient performance or prejudice on the part of Douglas because the court clearly found that she informed Harlan of his right to appeal.

Harlan appeals.

## ASSIGNMENTS OF ERROR

Harlan claims that the district court erred in denying his motion for postconviction relief in which he claimed he was denied effective assistance of counsel due to counsel's failure to file a direct appeal.

## STANDARD OF REVIEW

Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. *State v. Dalton*, 307 Neb. 465, 949 N.W.2d 752 (2020). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id*. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington, supra*, an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Russell*, 308 Neb. 499, 954 N.W.2d 920 (2021).

In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. *Id*. Where competent evidence supports the district court's findings, the appellate court will not substitute its factual findings for those of the district court. *Id.*

## ANALYSIS

Harlan argues that the district court erred in denying his motion for postconviction relief upon the basis that he received ineffective assistance of counsel. Harlan asserts that the court improperly credited trial counsel's testimony rather than harmonizing it with his own.

Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable. *State v. Russell, supra*. The Nebraska Postconviction Act is intended to provide relief in those cases where a miscarriage of justice may have occurred; it is not intended to be a procedure to secure a routine review for any defendant dissatisfied with his or her sentence. *State v. Stricklin*, 310 Neb. 478, 967 N.W.2d 130 (2021). In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *State v. Newman*, 300 Neb. 770, 916 N.W.2d 393 (2018).

To establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland*, to show that (1) counsel's

performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law and (2) that counsel's deficient performance prejudiced the defense in his or her case. See *State v. Dalton, supra*. In order to obtain a new direct appeal as postconviction relief, the defendant must show, by a preponderance of the evidence, that counsel's ineffectiveness, rather than defendant's own actions, caused the loss of the right to appeal. See *State v. Russell, supra*. The two prongs of the test for ineffective assistance of counsel may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *Id*.

On the deficiency prong, the U.S. Supreme Court has said that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. *Id*. But the U.S. Supreme Court has rejected a bright-line rule that counsel is per se deficient by failing to automatically file a notice of appeal unless the defendant specifically instructs counsel not to. *Id*.

On the prejudice prong of the ineffective assistance analysis seeking a new direct appeal, the U.S. Supreme Court has said that when counsel's constitutionally deficient performance deprives a defendant of an appeal that the defendant otherwise would have taken, such a denial of a critical stage of the judicial proceedings is one of the extreme failures of performance that demands a presumption of prejudice. *Id*. We have similarly articulated that after a trial, conviction, and sentencing, if counsel deficiently fails to file or perfect an appeal after being so directed by the criminal defendant, prejudice will be presumed and counsel will be deemed ineffective, thus entitling the defendant to postconviction relief. *Id*.

But the U.S. Supreme Court has explained, with regard to the prejudice prong in an ineffective assistance claim seeking a new direct appeal, that it is a "critical requirement that counsel's deficient performance must actually cause the forfeiture of the defendant's appeal." *State v. Russell*, 308 Neb. 499, 507-08, 954 N.W.2d 920, 928 (2021) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000)). Thus, in *Peguero v. United States*, 526 U.S. 23, 119 S. Ct. 961, 143 L. Ed. 2d 18 (1999), the Court held that the defendant did not sustain his burden to demonstrate he was prejudiced by trial counsel's deficient failure to inform him of his right to appeal, when the defendant had actual knowledge of the right to appeal and did not request that trial counsel file an appeal. Discussing *Peguero* in *Roe v. Flores-Ortega, supra*, the Court indicated that in such circumstances, an inquiry into whether counsel was deficient for failing to consult with the defendant as to the right to appeal is unnecessary.

Provided the relevant standard, we find no error in the district courts order denying postconviction relief. Under *Strickland*, Harlan bore the burden to establish that counsel's performance was deficient, and that the deficiency prejudiced him. The district court found that Douglas adequately consulted with Harlan regarding his right to an appeal and that Harlan decided not to pursue one. The record supports that conclusion. Douglas testified that she reviewed appellate rights with Harlan on several occasions, consistent with her standard practice. She further emphasized that she discussed Harlan's limited time to appeal immediately following sentencing.

Douglas also provided billing records documenting a February 16, 2021, post sentencing conversation in which she advised Harlan regarding the merits of an appeal. She recorded that Harlan expressed no desire to appeal, memorializing the entry as "[s]poke to client: [d]oesn't want appeal." Douglas further documented a subsequent conversation with Bolton, during which she

- 5 -

reiterated her prior discussion with Harlan and followed that conversation with a confirmation letter indicating that Harlan's case was closed and that there were no appeal issues or further hearings.

The district court decidedly discredited Harlan's testimony based on both documentary and recorded evidence. The court reviewed phone calls between Harlan and Bolton and found no mention of an appeal, contradicting their testimony that Harlan asked his mother to contact Douglas to initiate an appeal. Additional inconsistencies further undermined their credibility. Harlan initially testified that he first learned about the right to appeal from a cellmate, whereas Bolton asserted that Harlan had already urged her to contact counsel prior to that exchange.

Harlan also denied any conversation with Douglas occurring on February 16, 2021, despite her contemporaneous documentation of that call. Similarly, Bolton initially claimed that she never spoke with Douglas following their conversation at sentencing, but both Douglas' records and Bolton's later testimony contradict that account. However, in an evidentiary hearing for postconviction relief, the postconviction trial judge, as the trier of fact, resolves conflicts in evidence and questions of fact, including witness credibility and the weight to be given a witness' testimony. See *State v. Dalton*, 307 Neb. 465, 949 N.W.2d 752 (2020). We give substantial deference to the district court's credibility determinations, which are supported by the record here.

To the extent Harlan argues that the court should have harmonized the testimony with his own, it is the province of the trier of the facts to harmonize the testimony insofar as that is possible, and in case of conflicts, to decide as to the weight to be given the testimony of the witnesses. See *Jeffres v. Countryside Homes of Lincoln, Inc.*, 220 Neb. 26, 367 N.W.2d 728 (1985) (quoting *Reed v. County of Hall*, 199 Neb. 134, 256 N.W.2d 861 (1977)). However, a defendant who relies upon his or her testimony with little or no supporting documentary evidence does so at the risk of nonpersuasion. See *State v. Russell*, 308 Neb. 499, 954 N.W.2d 920 (2021). Triers of fact have the right to test the credibility of witnesses by their self-interest and to weigh it against the evidence, or the lack thereof. *Id*. Evidence not directly contradicted is not necessarily binding on the triers of fact, and may be given no weight where it is inherently improbable, unreasonable, self-contradictory, or inconsistent with facts or circumstances in evidence. *Id*.

Given the district court's findings regarding credibility, counsel's performance cannot be deemed deficient. The evidence establishes that Douglas consulted with Harlan about an appeal and that Harlan affirmatively declined. Counsel is not required to override a client's informed decision.

Furthermore, the district court found no credible evidence that Harlan expressed a desire to appeal or that counsel prevented him from doing so. To the contrary, Harlan confirmed his satisfaction with the plea and the sentence immediately after proceedings and shook counsel's hand. Absent any evidence that Harlan would have appealed but for counsel's inaction, the prejudice prong also fails.

As Harlan cannot show that counsel's performance fell below the standard of a reasonably competent attorney and cannot demonstrate a reasonable probability that an appeal would have been filed but for any alleged deficiency, his claim fails the *Strickland* test.

Upon our review of the record, we recognized the order submitted by the district court indicates that the evidentiary hearing was held on October 17, 2024, while the bill of exceptions

reflects that the proceedings occurred on October 7, 2024. To the extent this discrepancy arises to error, it's harmless and does not affect the outcome of this court's ruling.

CONCLUSION

For the foregoing reasons, the decision of the district court denying postconviction relief is affirmed.

AFFIRMED.